## Lightner *against* Mooney.

When two years have elapsed after a treasurer's sale of unseated land for taxes, the title of the original owner is absolutely divested; and a release by the purchaser to him, can only operate as an original conveyance.

Where there are two deeds of conveyance of different dates, from the same grantor to different persons, neither of which is recorded within six months, that which is first recorded will take priority. But possession of the land by the grantee is equivalent to recording his deed.

Possession taken by one of the grantees after the date of the deed of the other grantee, is not notice equivalent to recording the deed, nor will it affect the rights of the respective claimants.

The recording of subsequent titles by grantees unconnected by the record with the original title, will not affect a purchaser.

ERROR to the common pleas of *Beaver* county.

This was an action of ejectment, brought by Jesse Lightner, plaintiff in error and plaintiff below, against James Mooney, in which a verdict and judgment were rendered in favour of the defendant. It was instituted to recover the possession of 100 acres of land, part of lot No. 2, in the first donation district, containing 500 acres.

The plaintiff gave in evidence the duplicates containing the assessment of this tract with county taxes for the years 1817 and 1818, amounting to four dollars, and also the assessment of road taxes for the year 1817, amounting to two dollars. Also, a deed from James Dennis, treasurer of Beaver county, to Robert Laughlin for the tract, sold to him for arrearages of taxes on the 30th of August 1820, dated the day of the sale. The arrearages of taxes stated in the deed were six dollars, and the deed was acknowledged on the 9th of January 1821. Also, a bond for the surplus money, one dollar, dated the 30th of August 1820, and filed on the 9th of January 1821, in the court of common pleas, reciting the sale of the land for 10 dollars, of which the sum of nine dollars had been already paid by Laughlin to the treasurer, in full of taxes and costs: a deed from Robert Laughlin to Caleb Jones, for 200 acres and 40 perches of land, part of said lot, described by courses and distances,

[Lightner v. Mooney.]

dated March 31, 1821, acknowledged before Nicholas Vaneman, a justice of the peace, on the 12th of August 1821, and recorded on the 12th of December 1836.   This deed was also proved by one of the subscribing witnesses, on the 6th of December 1838, and again recorded on the 11th of December 1838.   It was a deed poll, and in consideration of 35 dollars paid, Laughlin "remised, released, and forever quit-claimed unto the said Caleb Jones, his heirs and assigns forever," the 200 acres and 40 perches, to have and to hold in fee.   Also, a deed from Caleb Jones to George Lightner for 100 acres of the land conveyed to him, described as the S. W. corner of the lot, dated the 29th of June 1825, and a deed from George Lightner to Jesse Lightner, for the same 100 acres of land, dated the 2d of February 1837.   To show that the title was out of the commonwealth at the time of the sale by the county treasurer, the plaintiff gave in evidence the patent from the commonwealth to Col. Stephen Bayard for said lot, and a deed of assignment from Col. Stephen Bayard to Jonathan B. Smith, dated the 2d of July 1795.

The defendant gave in evidence an exemplification of the last will and testament of Jonathan B. Smith, dated the 1st of June 1812, of which probate was made on the 20th of June 1812, in the register's office of Philadelphia.   A deed from Robert Ralston, Abraham M'Kinney and William Rush, (to whom the tract of land in dispute had been devised in trust, by the said last will and testament, to Alexander Alcorn, dated the 3d of September 1829, recorded the 18th of February 1831; a deed from Alexander Alcorn and wife to James Mooney, the defendant, dated the 25th of April 1831, for 250 acres of the tract, recorded the 7th of September 1832, which embraced the tract that the plaintiff claimed.   He then showed in evidence a letter from John R. Smith to James Heslep, dated the 10th of November 1824, authorizing Heslep to take charge of the land, and act as agent: a deed poll of release from Robert Laughlin to James Heslep, dated the 31st of January 1825, and recorded the 13th of March 1837.   Robert Laughlin, by this deed, in consideration of 41 dollars and 50 cents, "remised, released, and forever quit-claimed to the said James Heslep, his heirs and assigns forever, all the right, title, interest, claim and demand I, the said Robert Laughlin, have in or unto the following described tract," No. 2, donation district, containing 500 acres, " which said Robert holds by a deed from James Dennis, treasurer," &c.   Also, a receipt of Samuel M'Clure, Esq., treasurer of Beaver county, dated the 30th of July 1822, for the taxes of 1817, 1818, 1819, 1820 and 1821, and 50 cents costs of advertising, paid by the trustees under the will of J. B. Smith.

Patrick Mooney, a witness on the part of the defendant, proved, that the purchase was made of Alcorn, two years before the date of the deed from Alcorn to the defendant, and that he commenced his improvement shortly after the purchase, and moved on the land

immediately after the date of the deed. It was in proof that Lightner, shortly after the date of the deed from Caleb Jones to him, built a cabin, and cleared a small piece of ground; the cabin was thrown down, and the logs burned. Jacob Jones stated, that about fourteen years ago, in a conversation with Mr Alcorn about the Lightners, he told Mr Alcorn that Caleb Jones had purchased a commissioners' deed of Robert Laughlin, and had sold to Lightner.

This was the substance of the evidence in the cause, that was relevant to the issue.

The court below charged the jury as follows:—

" The defendant contends, that as the treasurer's deed to Laughlin does not state the years for which the arrearges of taxes accrued, and having paid to Mr M'Clure, the treasurer, in 1822, the taxes for which it is alleged the tract was sold, the deed is invalid, and vested no title in Robert Laughlin. It is not improbable, that Laughlin may not have paid the taxes and costs, for which the land was sold to Mr Dennis, treasurer. But if the cause turned on this, would that affect the title of the plaintiff? The treasurer having executed and acknowledged the deed in open court, and the acknowledgment entered of record, and having taken a bond for the surplus money, the title passed to the purchaser. The treasurer, with his sureties, were responsible to the county for the taxes for which it was sold, was chargeable with them and for them. The land could not be again sold. The treasurer might have refused to execute and acknowledge the deed, until the taxes and costs were paid, but having executed and acknowledged the deed, the amount of the taxes and costs payable on the purchase, was a matter between the purchaser and treasurer, that could not affect the title.

"It is also contended, that the transfer by Laughlin to Jones is a release; that, there being no possession, nor lease, nor title, the release could vest no title. It is true that a release, to operate as such, must be to a person who has some right or interest in the estate released, and operates to the enlargement of an estate; but the court entertain the opinion, that the law is now well settled, that a release shall operate as a grant, when it would have no operation as a release to vest title.

" On the part of the plaintiff it is contended, that the deed from Laughlin to Jones, being recorded on the 12th of December 1836, and before the deed of release from Laughlin to Heslep, the agent of the trustees and heirs of Jonathan B. Smith, was proved and recorded, entitles the plaintiff to recover. The law is settled, that although the person to whom a deed of conveyance has been made, has omitted to have it recorded within the six months from its delivery, yet if it is put upon record before a deed subsequently made of the same land by the same grantor, the title will prevail against the subsequent deed. The court entertains the opinion, that this cause does not turn on the recording acts. Until within a very few

x.—2 к*

years past, when the original owner of a tract of land, which had been sold for arrearages of taxes, had taken a release from the purchaser, and lifted (as it was called) the treasurer's deed, it was not considered that the title was derived by the conveyance from the purchaser at treasurer's sale, but that he was in by his original title, and had, by the release and taking up the treasurer's deed, removed the effects of the sale, in the same manner as if he had within the two years redeemed the tract, by paying the taxes and costs and twenty-five per cent; the limit of two years, in which redemption might be made by the original owner, might be extended by the purchaser at the sale for taxes. In the present case, the sale was made for arreages of taxes in 1820. In 1822, the taxes, for which it is alleged to have been sold, were paid by the original owner to the treasurer. In November 1824, James Heslep became the agent of the trustees and heirs of Smith, and in January 1825, he procured a release from Robert Laughlin of the treasurer's deed, and received from him the treasurer's deed. There was no person in possession of the tract, or any part of it, under the purchase at the sale for taxes; no conveyance of any part of it on record, on the 3d of September 1829, when the tract was conveyed to Alcorn. On examining the records, the title would appear to be perfectly good; the original owner's title from the commonwealth regularly vested in the grantors; the purchaser at the sale for taxes in 1820, had released, and had given to the agent the treasurer's deed, which accompanied the title papers. The defendant commences his improvement under his purchase from Alcorn, and is in the actual possession of the premises, seven years before the deed to Jones was put on record. If a title of this description, under these circumstances, must prevail against the title of the defendant, it would operate with extreme hardship. I can hardly conceive of any thing more that could have been done by the original owners and their agent, than has been done in this case, unless it was to have recorded the release from Laughlin to Heslep, within six months from the time it was made, and this, certainly, has not been the practice with this description of title. It is perfectly clear, that a person to whom a conveyance has been made, who goes into possession, and is occupying the land conveyed to him, although he has not had his deed recorded within six months, fixed by the recording act, could not and would not be affected by a subsequent conveyance of the same land by the same grantor, his possession would protect him, and would be as effectual as notice, or the recording of the title, and in the present case, the possession of Mooney for so long a period before the recording of the deed to Jones, should protect him, as much as if the release to Heslep had been recorded before the first record of the deed from Laughlin to Jones. The court entertain the opinion, and so instruct the jury, that the deed from the trustees to Alcorn, and from Alcorn and wife to the defendant, being recorded long previous to the deed

[Lightner v. Mooney.]

from Robert Laughlin to Caleb Jones being placed upon record, and the defendant in the actual possession of the land under the original title, and having the treasurer's deed, and a release of all right under it, from the purchaser to the agent of those from whom the original title is derived, the release not being recorded before the first record of the deed from Laughlin to Jones, will not entitle the plaintiff to recover. Your verdict will therefore be in favour of the defendant."

The plaintiff excepted to the charge.

The following errors were assigned:—

1. The court below erred in charging the jury, that this cause did not turn upon the recording act, and in giving them to understand, that the former owners of the land, after the sale for taxes, and after the time of redemption had expired, still had some title or interest in the land, which might be connected with the deed from Robert Laughlin to James Heslep, their agent, and thus enable it to take effect as a release, instead of an original conveyance, when, in fact, the orginal title was wholly extinct, and the defendant had no other title than that derived through the deed from Laughlin to Heslep.

2. They erred in charging the jury, that the plaintiff could not recover under the circumstances of this case; notwithstanding the deed from Laughlin to Heslep had not been proved and recorded, until after the acknowledgment and recording of the deed from Laughlin to Jones, and that their verdict should be for the defendant.

*Agnew,* for plaintiff in error, cited the *Act of Assembly of* 1804, concerning sales for taxes, *sect.* 5; 3 *Bl. Com.* 19; 2 *Bl. Com.* 177, 324; *Recording Act of* 1775; 1 *Dall.* 68.

*Shannon,* for defendant in error, cited 5 *Binn.* 132, 6 *Serg. & Rawle* 184; 7 *Watts* 163.

The opinion of the court was delivered by

Sergeant, J.—The principles on which the court below ruled this case, seem to us not sustainable. The relase from Laughlin, the purchaser at the treasurer's sale, to the agent of the trustees of Jonathan B. Smith, could operate only as an original conveyance: for the two years allowed by law for redemption by the owner, after a sale of unseated lands for taxes, had run round, without any redemption by the owners, or conveyance from the purchaser, and the original title of the owners became thereby totally divested, there not being left in them even a spark of interest on which a release could operate. This is manifest from the language of the act of 1804, by which the deed to the purchaser vests in him all the interest of the owner. Then the deed could not operate as a release, unless there was an interest of some kind left in the releasee,

[Lightner v. Mooney.]

and as after two years, without any act done, that interest wholly ceased, the release might operate as an original conveyance, but it could possess no other effect. The release of the 31st January 1825, from Laughlin, the purchaser, to Heslep, (as agent for the trustees of J. B. Smith,) must be treated as an acquisition by them, on that date, of a new and independent title, not susceptible of being connected in any way with the prior title formerly held by them.

The case then is, that there are two titles by deed from Laughlin, the purchaser, at treasurer's sale; one is that of Caleb Jones, by deed of 31st March 1821, under which the plaintiff claims; the other from the trustees of J. B. Smith, by deed of 31st January 1825. Neither of these deeds was recorded within six months from their date, but Jones's deed was recorded on the 12th December 1836, and that of the trustees of Smith, on the 13th March 1837. Of course, under our recording acts, the title of Jones is the best, unless there be some ground on which the case is excepted out of the provison of the recording acts.

It is held by the court below, that inasmuch as Mooney took possession of the land at the date of his deed from Alcorn, 25th April 1831, and continued in possession up to the time when the plaintiff, Jesse Lightner purchased, viz: the 2d February 1837, the possession of Mooney was such a notice to the plaintiff as would postpone him, notwithstanding the non-recording of the deed to the trustees of Smith, under which he held. The rule undoubtedly is well settled, that if one seised of land makes a deed to A, who enters into and holds possession of the land, but does not record his deed in six months, and the grantor makes a subsequent deed to B, who records his deed first, B is notwithstanding postponed to A; the possession of A being notice of his title equivalent to recording. But that was not the case here. The land was vacant when Caleb Jones purchased; he was the first grantee from Laughlin; he could have no notice of any opposing title under Laughlin. The grant to Heslep, under which the defendant claims, was nearly four years afterwards, and the possession of Mooney was not till ten years afterwards. Then Mooney's being in possession when Jesse Lightner purchased from George Lightner, is of no importance. Jesse Lightner has a right to avail himself of the strength of the title of the grantors under whom he claimed, that of George Lightner and Caleb Jones.

The recording of Mooney's conveyance on the 7th September 1832, has no greater effect. It is the recording of the conveyance from Laughlin that is important. A purchaser can obtain notice from that alone. He is not affected by the recording of subsequent conveyance by grantees unconnected by the record with the original title.

Judgment reversed, and a *venire facias de novo* awarded.