The Chancellor.
The hill is filed upon a mortgage, given hy Ferdinand G. Simpson to Pamela Adams, and hy her assigned to the complainants. The controversy is in reference to the priority of this mortgage, and a mortgage given hy Calvin A. Kanouse to Noah Estell, now held by the defendant, Mary Estell, as the executrix of the last will of Noah Estell, deceased.
Stephen Adams, being indebted to Noah Estell in the sum of twelve hundred dollars for money lent, had given a mortgage to secure the same on several tracts of land, embracing the land which is covered hy the mortgages in dispute. By an arrangement between Adams, Estell, and Kanouse, Adams conveyed to Kanouse the portion of the mortgaged premises embraced in the disputed mortgages. The money received by the mortgagee was reduced from §1600 to §1810; and to secure this latter sum, Kanouse executed a mortgage to Estell, embracing the land conveyed in the deed from Adams. Estell then cancelled his §1600 mortgage, or delivered it up to Adams for that purpose. The deed from Adams to Kanouse was dated the 2d of August, 1847. The mortgage hears the same date. Both were acknowledged on the 12th of August, 1847. The mortgage was recorded on the 2d day of September of the same year’. The deed has never been recorded. It is alleged that it was, some time after its delivery, destroyed by Kanouse. Kanouse entered, into the possession of the premises under his deed, and continued in possession until after the execution of the mortgage under which the complainants claim their priority.
The complainants had a claim against Pamela Adams and Calvin A. Kanouse for debt, and were prosecuting it at law. Kanouse offered to compromise this claim. He stated to the complainants, through his attorney, that Pa *248 mela Adams owned certain premises, which Stephen Adams held in his name in trust for her, and that the premises were sold to one Ferdinand O. Simpson, who was to give to Pamela Adams a mortgage of sixteen hundred dollars for the purchase money. Kanouse offered this mortgage to the complainants, if they would advance, in cash, the balance of the mortgage money, after deducting their claim of $797.98. The proposition was acceded to; and on the 6th of December, 1849, Stephen Adams, at the procurement of Kanouse, executed a deed to Simpson for the same premises which he, Adams, had, as before stated, conveyed to Kanouse, and Kanouse had mortgaged to Estell. Simpson executed a mortgage to Pamela Adams to secure the purchase money of $1600, and she assigned the mortgage to the complainants, who, in consideration of the assignment, receipted their claim of $797.98, and for the balance gave their promissory notes, at a short date, which were paid at maturity. The deed to Simpson and the mortgage from Simpson to Pamela Adams were duly recorded. The deed from Stephen Adams to Kanouse, through which Mary Estell, who holds the mortgage from Kanouse to Noah Estell, claims title, has never been recorded.
Both parties claim under Stephen Adams. The complainants’ mortgage is subsequent, in date and execution, to that of the defendant, Mary Estell; but the complainants claim priority, on the ground that, at the time their mortgage was executed, the deed from Adams to Kanouse was not recorded; and the title on the record being in Stephen Adams, they insist that the recording of the Es-tell mortgage afforded no notice of its existence.
On behalf of Mary Estell, it is insisted, that the mortgage she holds is protected by the very language of the statute; that the statute declares a mortgage void and of no effect against a subsequent bona fide purchaser or mortgagee for a valuable consideration, unless such mortgage shall be recorded at or before the time of recording the said *249 mortgage or conveyance to such subsequent purchaser or mortgagee, and that, in point of fact, the Bstell mortgage was recorded before the subsequent mortgage held by the complainants. But, by the very language of the statute, the deed from Adams to Kanouse is void and of no effect against the subsequent deed from. Adams to Simpson, because it was not recorded at or before the time of recording the subsequent deed to Simpson. The defendant, Mary Estell, then claims under a grantor whose deed is void, and who, at the time of the conveyance, had no title against the grantor under whom the complainants hold. Kow it could be of no advantage to Simpson that his recorded deed should be valid against the unregistered deed of Kanouse, if a grantee under the latter could claim a title superior to that of Simpson’s or of his grantee.
The whole object of the registry acts is to protect subsequent purchasers and encumbrancers against previous conveyances which are not recorded, and to deprive the holder of the previous unregistered conveyance, &c., of the right, which his priority in execution would have given him at the common law. But if the construction contended for be adopted this object is totally defeated: the registry will afford no protection to an innocent purchaser. When one link in the chain of title is wanting, there is no clue to guide the purchaser in his search to the next succeeding link by which the chain is continued. The title upon the record is the purchaser’s protection, and when ho has traced the title down to an individual, out of whom the record does not carry it, the registry acts make that title the purchaser’s protection. The registry of a deed is notice only to those who claim through or under the grantor by whom the deed was executed. Raynor v. Wilson, 6 Hall 473; Stuyvesant v. Hall, 2 Barbour’s Ch. Rep. 151; Murray v. Ballou, 1 Johns. Ch. Rep. 556; Keller v. Nutz, 5 S. & R. 446; Lightner v. Mooney, 10 Watts 412; Bates v. Norcross, 14 Pick. 224; Tilton v. Hunter, 24 Maine 29; Crockett v. Maguire, 10 Missouri 34; Lieby v. *250 Wolf, 10 Ohio 83. Nor will a purchaser he bound to take notice of the record of a deed executed by a prior grantee whose own deed has not been recorded. Embury v. Connor, 2 Sandf. Ch. Rep. 98; Roberts v. Borune, 23 Maine 165. And where the deed of a vendor is not recorded, the record of a mortgage given by the vendee for the purchase money will not be notice to a subsequent purchaser. Veazie v. Parker, 23 Maine 170; Pearce v. Taylor, Ib. 246. Eor in any such case the purchaser is without a clue to guide him in searching the record. 2 A. L. C. in Eq. 129.
The mortgage to Estell is void against the complainants’ mortgage, if Simpson, under whom the complainants hold, was a bona fide purchaser for a valuable consideration without notice of the Estell mortgage.
It is insisted that Simpson is not a bona fide purchaser; and it is also insisted that the complainants had notice of the Estell mortgage.
Sinrpson must be regarded as a bona fide purchaser for a valuable consideration. It is true it may be considered as settled that actual payment is, in general, necessary to the character of a purchaser for a valuable consideration, and that giving a security, or executing an obligation for payment, will not be sufficient. 2 Lead. Cases in Equity 77, 79; Baldwin v. Johnson et al., Saxton 441. The reason why equity refuses to regard a security given for the price of land as equivalent to actual payment, is because it can afford relief for a failure of title when there is a mere obligation for the payment of the purchase money, but not where it is actually paid. It is true Simpson did not actually pay the purchase money, but gave Ms obligation for it, secured by a mortgage on the premises. But it was part of the negotiation that, upon the execution of the bond and mortgage by Simpson, the complainants should advance the purchase money to Simpson’s grantor, and take an assignment of the securities. This was done, and the complainants did actually advance the purchase money to Simpson’s grantor, and took the assignment of the bond *251 and mortgage, as had been previously agreed. This is an exception to the application of the principle, because equity cannot give that relief which was the ground which led to its adoption. By protecting Simpson against payment of his bond would not put the purchase money back in the pockets of the complainant. The only sure relief this court can afford them is to protect their lien upon the property. If they then acted bona fide in paying the purchase money, they are entitled to the same protection that Simpson would have been under like circumstances.
The farther question is — whether the complainants are mortgagees without notice f It is alleged, by the defendants, that when the papers wore executed, Mr. Chandler, who was then preparing the papers, and acting as the mutual attorney and counsel of the parties, was informed, by Stephen Adams, of the deed he had before executed to Kanouse.
That there was a gross fraud practised in this transaction is beyond dispute. It is very clear that Kanouse deliberately contrived the whole plan to defraud either Es-tell or the complainants, audit mattered not to him which. I am not satisfied that any one else participated in the fraudulent intent. I can well see, from the evidence, how Adams might have acted innocently through the management of Kanouse, and I do not think the weight of the evidence is against the integrity of Adams or his Avife. It is a question of fact — whether Adams and his wife did actually give Mr. Chandler notice of the conveyance. If they did, then the complainants are affected by that notice. Notice to an agent, attorney, or counsel of a purchaser, is constructive notice to their principal; and the same rule applies if they are concerned for both vendor and purchaser in the same transaction. See the cases cited in 2 Lead. Ca. in Eq. 106.
Adams and his Avife both swear positively that Adams informed Mr. Chandler of the deed that had been exe *252 cuted to Kanouse, and Adams says that, on that account, he hesitated to execute the deed to Simpson; that Mr. Chandler reasoned with him about it, and told him the deed to Kanouse was good for nothing; and that after much persuasion, and assurances that it was all right, he and his wife executed the deed. Mr. Chandler denies ever having had notice of the deed, and of Adams informing him he had executed it. He says he searched the record, and never thought of such a thing as looking for the title in Kanouse, and that he never had any suspicion of it, until long after he had placed the mortgage on record. The transaction was of a character that will not warrant the supposition that a want of recollection in either of the witnesses should cause this discrepancy. Both witnesses are unimpeached and unimpeachable. It is the duty of the court to reconcile this contradiction, if possible. After carefully scrutinizing the evidence and all the circumstances, it appears to me right to consider the fact of the unexecuted deed a satisfactory solution of the otherwise irreconcilable contradiction in the testimony.
Mr. Chandler had prepared the papers at his office, and had them ready for execution. He went to Kanouse’s, who lived some miles distant. When he arrived there, he found he had forgotten the papers. He concluded, as he had came so far, that he would prepare another deed, and have it executed. Mr. Kanouse, for the purpose of giving a description of the land, furnished him with a deed, filled up ready for execution, from Adams and wife to Kanouse. It was not executed. From this, Mr. Chandler took the description of the premises, and drew a deed. With this deed, he and Kanouse went to Mr. Adams’ house, which was some distance off, and then the deed was executed. Mr. Chandler insists that all the conversation between Adams and himself was in reference to the unexecuted deed. Adams insists it was in reference to the one that had been executed and delivered. It was very natural that, during the conversation about the deed, Mr. *253 Chandler’s mind should be engrossed with the idea of the unexecuted deed which had been given him by Kanouse. The idea of an executed deed was altogether inconsistent with everything he had done in relation to the property. Kanouse had brought him the necessary title deeds to' enable him to search the records — had given him the title just as he found it on record — and had assured him that day, in reference to the unexecuted deed, that it had been his intention to take a deed, but he had not, for the reason that he was in embarrassed circumstances. It is quite impossible to conceive that Adams could, in the presence of Kanouse, have informed Mr. Chandler that he had executed a deed to Kanouse, and Mr. Chandler not have rebuked Kanouse on the spot for his gross deception. Under the idea that Kanouse saw at once the mistake under which both were laboring, Adams, referring to the executed deed, and Chandler to the unexecuted one, it is easily to be imagined how Kanouse, with the art which he was evidently the master, might have kept up the misunderstanding which he saw existed. Mr. Chandler swears he did not have notice of the deed to Kanouse, and I think his evidence should be relied upon.
It was further argued, in support of the priority of the Estell mortgage, that the purchase of a chose in action is not within the rule w'hich protects purchasers for a valuable consideration, and that the complainants, as the assignees of Simpson, took the bond and mortgage subject to all equities. It is well settled that the assignee of a chose in action takes it subject to the same equity it was subject to in the hands of the original obligor or debtor. Murray v. Lylburn, 2 J. C. R. 443; 1 P. Wms. 495; Coles v. Jones, 2 Vern. 693; Matthews v. Wallwyn, 4 Ves. 118; Van Rennselaer v. Stafford, Hopkins 569; 9 Cowen 316; Poiden v. Martin, 1 Sand. Ch. 569; some of which cases show that the assignment of a mortgage is to be regarded in the same light as the assignment of a mere chose in action, the mortgage debt, in equity, being regarded as the *254 principal, and the mortgage a mere accessary. 2 Lead. Ca. in Eq. 52. There is no hardship in this rule, because the assignee may always resort to the original obligor or debtor, and ascertain from him what equities exist between him and his creditor. But the rule extends no further than this — that the equities to which the assignment is subject are the equities residing in the original obligor or debtor. In Livingston v. Dean and others, 2 J. C. R. 479, it was decided that the assignee of a bond and mortgage takes it subject to all the equity of the mortgagor, but not to the latent equity of a third person. To subject him to such an equity, he must have express or constructive notice of it at the time of the assignment. In Mott v. Clark, 9 Barr. 399, the mortgagee had notice, at the time of taking the mortgage, that the mortgagor was a mere trustee for Clark. The mortgage was assigned to Mott without notice. It was held, by the court, that a mortgage might be discharged by equities between the mortgagor and mortgagee, against which the assignee might protect himself by making inquiry of the mortgagor at the time of the assignment; yet that with regard to the equities of third persons the case was different, and an assignment for value was to be regarded as a purchase. The mortgage was decided to be good in the hands of the assignee, not only against the equity of Clark, which bound it in those of the mortgagee, but against a 'deed from the mortgagor to Clark, which was not recorded.
How it is said that Simpson, not having paid the purchase money, was not a bona fide purchaser for a valuable consideration; that, in equity, he was entitled to be protected against paying the purchase money which was secured by his bond and mortgage, and that Estell’s mortgage would thus be protected, and no injury accrue to any one. But this is not the kind of equity which affects the assignee, and for the reason, that it was not within the compass of any inquiry the assignees could make to possess themselves of the knowledge that any such equity existed. *255 It was a latent equity in a third person, which might have been adjusted without injury to any one, until that equity was disturbed by legal and equitable rights acquired by innocent purchasers. Redfearn v. Ferrier, 1 Dow. 50.
There is still another ground upon which it is insisted that the priority of the Estell mortgage ought to be established. Kanouse went into actual possession under his deed. It is insisted that such possession was notice. See the numerous cases collected in the note to Le Neve v. Le Neve, 2 Lead. Ca. in Eq. 117.
But of what was Kanouse’s possession notice ? It was notice only of the legal or equitable interest which he assumed or claimed in the land; and the greatest extent to which it can be carried is, to visit the purchaser with notice of every fact and circumstance which he might have learned by making inquiry of the possessor. The purchaser can be affected only to the extent of the claim which the possessor asserted. In this case every inquiry was made of Kanouse. He denied having any title to the land; and it is now sought to affect an innocent purchaser by a title which he concealed for the very purpose of committing a fraud upon an innocent man. It was contended that this possession imposed the duty of searching the record, not only to ascertain what title Kanouse had, but what title he had parted with. The possession of Kanouse imposed upon the complainants no other duty than that of inquiring of him of what his right of possession consisted, and his response to such inquiry was binding in law and equity upon him and upon every person claiming under him.
The Estell mortgage must be postponed in payment to the complainants’ mortgage.