## UNITED STATES v. SLINEY and others.

*(Circuit Court, W. D. Pennsylvania. April 30, 1884.)*

1. EJECTMENT—PLAINTIFF'S TENANT IN POSSESSION—ASSUMED AGENCY.

    Where one standing in confidential relations to and assuming to act for the plaintiff put another into possession of land as the plaintiff's tenant, a defendant in ejectment, as against the plaintiff, cannot question the professed agent's authority to create the tenancy.

2. SAME—CONSTRUCTIVE NOTICE OF LANDLORD'S TITLE.

    Actual, exclusive, and visible possession of land by a tenant is constructive notice of his landlord's title equivalent to that afforded by the recording of a deed.

3. SAME—SECRET ATTORNMENT.

    It is not in the power of a tenant to destroy his landlord's possession by a secret attornment to another, and as against the landlord such attornment is void and of no effect.

4. SAME—QUITCLAIM—BONA FIDE PURCHASER WITHOUT NOTICE.

    A purchaser by deed of quitclaim simply is not to be regarded as a *bona fide* purchaser without notice.

5. SAME—CASE STATED.

    H., who entered upon the plaintiff's land as tenant, during his tenancy was induced secretly to attorn to and take a lease from S., who subsequently, with actual knowledge of the plaintiff's title, obtained quitclaims for trifling considerations from the widow and heirs of a deceased former owner who had conveyed, by an unrecorded deed, to a party under whom the plaintiff claims. S. then conveyed an undivided one-third of the land (H. being still in possession) to K. *Held*, that inquiry of H. was incumbent upon K., and that the latter was chargeable with constructive notice of the plaintiff's title.

Ejectment. *Sur* motion *ex parte* defendants for a new trial.

*George C. Wilson*, for plaintiff.

*John M. Thompson* and *B. C. Christy*, for defendants.

ACHESON, J. While it is true that the extent of J. B. Agnew's authorized agency was left uncertain by the proofs, it did clearly appear that he stood in confidential relations to and represented the United States in respect to the tract of land in controversy; and the jury have found, upon ample evidence, that by his authority John G. Huddleson entered upon the land in March, 1876, as the tenant of the United States, and that he continued in possession until and at the time when George W. King purchased and took his deed from John Sliney. . Now, as the authority of Agnew so to put Huddleson upon the land has never been questioned by his principal, and it was manifestly to the interest of the United States to have a tenant in possession, I am at a loss to see by what right the defendants can dispute Agnew's power to lease to Huddleson, when his tenancy is now set up by the United States. When Huddleson went upon the land, he entered (as he swears) by permission of Agnew, under the title and as the tenant of the United States. He could not otherwise enter without being a trespasser, and Agnew could not put him upon the land save as such tenant without a gross violation of his duty as attorney and agent of the government. I think, then, the tenancy of

Huddleson under the United States must be accepted as a fact sufficiently proved.

Huddleson's possession was actual, exclusive, and visible, and considered as that of his landlord, the United States; it was notice to King of the title of the latter, for by the settled law of Pennsylvania such possession of land is sufficient to put the purchaser on inquiry, and is constructive notice equivalent to that afforded by the recording of a deed. *Krider* v. *Lafferty*, 1 Whart. 303; *Sailor* v. *Hertzog*, 4 Whart. 259; *Lightner* v. *Mooney*, 10 Watts, 407. It is, however, contended that Huddleson's possession ceased to be that of the United States when induced by Agnew to attorn to John Sliney; he took from the latter on July 22, 1876, a lease of the premises. But, unquestionably, that transaction was a nullity, and the lease void as against the United States. Tayl. Landl. & Ten. § 180. It is not in the power of a tenant to destroy his landlord's possession by a secret agreement to attorn to another. *Rankin* v. *Tenbrook*, 5 Watts, 387. Such agreement is in law deemed fraudulent and collusive, and therefore void and of no effect. Id.

When Huddleson attorned to Sliney the latter had not the shadow of title to the land, and such as he afterwards acquired he took with notice of the prior title of the United States. Confessedly he was a purchaser *mala fide*. With full knowledge that by the unrecorded deed of December 10, 1864, James Gordon had conveyed the land to Cornelius Curtis, under whom the United States claim, Sliney, for considerations little more than nominal, obtained from the widow and children, the heirs at law, of Gordon, quitclaim deeds, one dated July 24, and the other, August 4, 1876. King's title comes through these quitclaim deeds; Sliney, for the recited consideration of $2,000, conveying to him the undivided third of the whole tract of 437 acres by deed dated March 15, 1877. Can King, as against the United States, claim to be a *bona fide* purchaser without notice?

That a purchaser by deed of quitclaim simply is not to be regarded as a *bona fide* purchaser without notice, is authoritatively decided. *Oliver* v. *Piatt*, 3 How. 333; *May* v. *Le Claire*, 11 Wall. 217; *Villa* v. *Rodriguez*, 12 Wall. 323; *Dickerson* v. *Colgrove*, 100 U. S. 578, 584; *Baker* v. *Humphrey*, 101 U. S. 494, 499. Now, King, dealing in respect to a large and valuable tract of land with a vendor whose title was derived exclusively from quitclaim deeds, upon trifling considerations, executed by the widow and heirs of a deceased former owner, found in the actual and exclusive possession of the land John G. Huddleson, who entered thereon as the tenant of the United States, and whose tenant (as we have seen) he continued to be and then was, notwithstanding the abortive attornment of July 22, 1876. What, then, was the duty of King? It seems to me clear that inquiry was incumbent upon him, (*Hood* v. *Fahnestock*, 1 Pa. St. 470;) and inquiry of Huddleson, undoubtedly, would have elicited all the facts to which he frankly testified on this trial. Adopting the language of

the court in *Hood* v. *Fahnestock,* Id. 476, it may be said: "No person can doubt that, if ordinary and common prudence had been observed, this purchase would not have been made," if, in fact, King was acting in good faith. Under the evidence here, I think the case is fairly within the recognized principle that whatever puts a party on inquiry amounts to notice, provided the inquiry becomes a duty,—as it always is with a purchaser,—and would lead to a discovery of the requisite fact by the exercise of ordinary diligence and understanding. *Hill* v. *Epley,* 31 Pa. St. 331.

The defendant's counsel, in the course of the argument on this motion, assumed that Huddleson, after the transaction of July, 1876, held himself out to the world as the tenant of Sliney. If this were so, I am not prepared to admit that it would better King's position. *Stockwell* v. *Robinson,* 1 Pa. St. 477. But, in fact, the evidence disclosed nothing of the kind. That transaction was altogether a secret attornment, and was followed by no visible change in the relations of any of the parties to the land. Nor did it appear that King knew of the existence of the lease of July 22, 1876. But, had this been shown, I am not sure that the fact would have helped his case in anywise; for knowledge that one in possession of land had attorned to an entire stranger, without pretense of title, who subsequently acquired the Gordon quitclaim deeds, would naturally have stimulated an honest purchaser to further inquiry. I am not convinced that there was any error in the instructions to the jury, and the result of the trial, I believe, is in accordance with the justice of the case.

And now, April 30, 1884, the motion for a new trial is denied, and it is ordered that judgment in favor of the plaintiff be entered upon the verdict.