METCALF, Respondent, vs. MUTUAL FIRE INSURANCE COM-
PANY OF THE TOWNS OF ALBANY, LIMA, DURAND, WAU-
BEEK, WATERVILLE, AND FRANKFORT, PEPIN COUNTY,
WISCONSIN, Appellant.

*April 10—May 21, 1907.*

*Fire insurance: False representations in application: Avoidance of
    policy: Knowledge of facts by insurer: Finding in special ver-
    dict construed.*

1. In a printed blank application for fire insurance was the double
    question: "Is the property mortgaged and to what amount?
    Is there any insurance by the mortgagee?"  Plaintiff answered
    that question, "No."  A finding by the jury to the effect that
    by that answer he intended to state that there was no insur-
    ance by the mortgagee, not that the property was not mort-
    gaged, is *held* to be sustained by the evidence.
2. Although at the time of applying for fire insurance plaintiff
    falsely represented to the president of the defendant company
    that no other person was interested in the property, yet if the
    president then had knowledge of the fact that some other per-
    son was interested therein the agreement then made by defend-
    ant to insure the property cannot be avoided after a loss on the
    ground that the making thereof was induced by such false rep-
    resentation.                                        .
3. A finding by the jury that the president of defendant company
    had "information" that some person other than plaintiff was
    interested in the property is a finding that the president had
    knowledge of the fact.

APPEAL from a judgment of the circuit court for Pepin
county: E. W. HELMS, Circuit Judge.  *Affirmed.*

This is an action to recover upon an oral agreement to in-
sure the plaintiff's property, which was destroyed by fire after
such agreement had been made.  It is claimed by defendant
that plaintiff made false representations at the time the in-
surance agreement was made which rendered the agreement
void.

The case was tried by the court and a jury and motions for

nonsuit and for the direction of a verdict for defendant were denied. The jury returned the following verdict:

"(1) Did the plaintiff at the time the application was made out and signed represent to James Black, the president of defendant company, that no other party was interested in the property described in such application? *A.* No. (2) If you answer 'Yes' to question 1, then did said Black believe such representations to be true? *A.* ———. (3) If you answer 'Yes' to question 1, then was said Black, as president of said company, induced by said representation to enter into the contract of insurance with the plaintiff? *A.* ———. (4) Was any other party than plaintiff interested in the property described in the application, at the time the application was made and delivered, besides the plaintiff? *A.* (by the court) Yes. (5) Did said James Black, at the time he took the application and undertaking and delivered to plaintiff the receipt, have information that any other person than plaintiff was interested in the property described in the application? *A.* Yes. (6) Did the said James Black or S. B. Ingram, Jr., at the time they appraised plaintiff's loss, have information that some other person than plaintiff was interested in the property described in the application? *A.* Yes. (7) Did the plaintiff at the time the application was made out and signed represent to the said James Black that the property described in the application was not mortgaged? *A.* No. (8) If you answer question 7 'Yes,' then did said Black believe said representation to be true? *A.* ———. (9) If you answer question 7 'Yes,' then was said Black induced by said representation to enter into contract of insurance with the plaintiff? *A.* ———. (10) Was any of the property affected by such insurance incumbered with mortgage at the time the application was made and signed? *A.* (by the court) Yes. (11) Did the said Black, at the time he took the application and undertaking and delivered the receipt, have information that any of the property described in the application was incumbered by mortgage? *A.* Yes. (12) Did the said Black or said Ingram, at the time plaintiff's loss was appraised by them, have information that any of the property described in the application was incumbered by mortgage? *A.* Yes. (13) Did the plaintiff at the time the application was made and signed represent to the said

Black that he was the owner in fee simple of the ground upon which the buildings mentioned in application were then standing? *A.* No. (14) If you answer 'Yes' to question 13, then did the said Black believe such representation to be true? *A.* ————. (15) If you answer 'Yes' to question 13, then was said Black induced by such representation to enter in the contract of insurance with the plaintiff? *A.* ————. (16) Was the plaintiff at the time of the delivery of such application to said Black the owner in fee simple of the ground upon which such buildings stood? *A.* (by the court) No. (17) Did the said Black, at the time the application and undertaking were taken and the receipt delivered, have information that the plaintiff was not the owner in fee simple of the ground upon which said buildings (mentioned in the application) then stood? *A.* Yes. (18) Did the said Black or the said Ingram, at the time plaintiff's loss was appraised by them, have information that the plaintiff was not the owner in fee simple of the ground upon which the buildings mentioned in the application stood, at the time the application was made and signed? *A.* Yes. (19) Did George Metcalf, before the application was written and signed, and on the day the same was so written and signed, inform the said Black that the plaintiff did not own the land upon which the buildings mentioned in the application were then standing? *A.* Yes. (20) What was the amount of plaintiff's loss upon his personal property covered by his contract of insurance by reason of the fire that burned the dwelling house? *A.* $45."

Motions were made by defendant to change answers to questions in verdict, which were denied, except the court ordered the answer to question number 1 changed from "No" to "Yes," the answer to question number 11 changed from "Yes" to "No," and the answer to question number 12 from "Yes" to "No." Motions by defendant for judgment on verdict and for new trial were denied and judgment given for plaintiff for $245 and costs, from which this appeal was taken.

For the appellant there was a brief by *C. A. Ingram* and *S. G. Gilman,* and oral argument by *Mr. Gilman.*

For the respondent the cause was submitted on the brief of *W. E. Plummer* and *W. C. Owen.*

KERWIN, J. The main assignment of error relates to the sufficiency of the evidence to support the verdict. The action is grounded upon an oral agreement to insure. The plaintiff made the first payment and gave the undertaking required for future payments, binding himself to pay to the defendant his *pro rata* share of losses which might be sustained by the company and incidental expenses as required by the defendant. Defendant is a mutual fire insurance company organized under ch. 103, Laws of 1872. One of the defendant's by-laws provides that any person desiring to insure with the company shall make application to the president and secretary of the company. And upon such application being made in this case it is claimed by defendant that plaintiff made certain false representations to the effect that the property on which insurance was sought was not mortgaged; that no other party than plaintiff was interested in it; and that plaintiff was the owner in fee simple of the ground upon which the buildings stood. The application was in the form of a printed blank, and the president of the company asked the questions and claims to have written in the answers made by plaintiff. The property in question consisted of a dwelling house, household furniture, and live stock. The dwelling and part of its contents were destroyed by fire. The live stock was not destroyed. The loss was adjusted by defendant and the amount is not contested.

The jury found that at the time the application was made out and signed the plaintiff did not represent to the president of the company that the property described in the application was not mortgaged. This finding, we think, is supported by the evidence. The answer relied upon by defendant to support the contention that plaintiff did represent that the property was not mortgaged is ambiguous. The question was: "Is the property mortgaged, and to what amount? Is there any insurance by the mortgagee?" To this double question plaintiff answered "No." Now it is very plain that

the plaintiff may by this answer have intended to answer that there was no insurance by the mortgagee, and not to answer that the property was not mortgaged; and when this answer is read in connection with the other evidence in the case, it seems quite clear that this is what he intended by his answer upon this subject. At any rate the jury would be justified in so finding. Under the well-established rule there is sufficient evidence to support this finding.

The verdict as changed by the court establishes that at the time the application was signed the plaintiff did represent to the president of the defendant that no other party was interested in the property, and that another party was in fact then interested. But the jury found, which finding stands in the case, that at said time the president had information of such fact. Now the question arises whether the defendant, with information of the fact that another party was interested in the property, can make a contract to insure, accept the premium, and after loss avoid payment on the claim that plaintiff represented that no other person was interested. The jury having found, upon sufficient evidence, that the president of defendant was informed that plaintiff was not the owner in fee simple of the ground and that some person other than plaintiff was interested in the property, the question arises whether defendant can avoid the agreement to insure on the ground that it was induced to make the agreement by the representations of the plaintiff to the effect that no other person was interested in the property. The jury in finding that defendant had "information" obviously found and intended to find that defendant had knowledge of the facts referred to. Information is defined: "Knowledge acquired, derived, or inculcated, as by observation, or by reading or study, or in conversation." Stand. Dict. 924. And notice is held to mean information by whatever means communicated; knowledge given or received. *U. S. v. Foote,* 13 Blatch. 418, 25 Fed. Cas. 1140. Prof. Pomeroy says that

actual notice "is information concerning the fact . . . directly and personally communicated to the party." 2 Pom. Eq. Jur. (3d ed.) § 595. Actual notice is also said to be "that which consists in express information of a fact." *Prouty v. Devin,* 118 Cal. 258, 50 Pac. 380; 5 Words & Phrases, 4840. So we think that under the finding of the jury the defendant was chargeable with notice or knowledge of the fact that some person other than plaintiff was interested in the property and was not justified in relying upon the representations of the plaintiff in that regard. The defendant was bound to use ordinary care and prudence and avail itself of the information at hand. Ordinarily such notice as would put a person of ordinary prudence upon inquiry is sufficient to charge the person with knowledge of such facts as he might by proper inquiry ascertain. *Thomas v. Flint,* 123 Mich. 10, 81 N. W. 936; *Osborne v. Ala. S. & W. Co.* 135 Ala. 571, 33 South. 687; *U. S. v. Sliney,* 21 Fed. 894; *Walker v. Neil,* 117 Ga. '733, 45 S. E. 387; *Martel v. Somers,* 26 Tex. 551; *Collins v. Davis,* 132 N. C. 106, 43 S. E. 579; *Bolles v. Chauncey,* 8 Conn. 389. So we think the defendant under the findings of the jury and the evidence must be charged with having acted upon its own judgment and not upon the representations of plaintiff. In *Herron v. Herron,* 71 Iowa, 428, 433, 32 N. W. 409, the court said:

"If plaintiff's attorney was deceived or misled by the information communicated to him, it was because he chose to accept the naked statement of the one he was dealing with, rather than seek reliable information from the sources pointed out to him, where it could have been obtained. It is the province of courts of equity to afford relief to those who have been overreached by the artifice or cunning or deceit of others; but where one voluntarily refuses to resort to the sources of information to which he is referred, but chooses rather to accept the statements of the person with whom he is dealing, as to matters material to the trade, he should be held to have acted on his own judgment, and no relief should be granted him if it turns out that the statements were false."

With the information the president of defendant had, under the repeated decisions of this court he was not justified in relying upon the representations of the plaintiff to the effect that no other person was interested in the property. *Mamlock v. Fairbanks,* 46 Wis. 415, 1 N. W. 167; *Connor v. Welch,* 51 Wis. 431, 8 N. W. 260; *Prince v. Overholser,* 75 Wis. 646, 44 N. W. 775; *Warner v. Benjamin,* 89 Wis. 290, 62 N. W. 179; *Farr v. Peterson,* 91 Wis. 182, 64 N. W. 863; *Kaiser v. Nummerdor,* 120 Wis. 234, 97 N. W. 932; *Standard Mfg. Co. v. Slot,* 121 Wis. 14, 98 N. W. 923; *J. H. Clark Co. v. Rice,* 127 Wis. 451, 106 N. W. 231.

Error is assigned upon the exclusion of evidence offered to the effect that the representations made by plaintiff induced defendant to enter into the contract to insure. From what has been said it follows that this evidence was properly excluded.

We find no reversible error in the record, and think the judgment below is right and should be affirmed.

*By the Court.*—The judgment of the court below is affirmed.