SIEMERS and others, Respondents, vs. MEEME MUTUAL HOME
PROTECTION INSURANCE COMPANY, Appellant.

*April 27—May 24, 1910.*

*Fire insurance: Provision that all owners must be named: Waiver:
Increase of risk: What constitutes: Policy construed: Duty of
insured as to saving property: Appeal: Findings: Trial: Order
of proof.*

1. A fire insurance policy provided that "all property must be in-
   sured in the names of all the owners, and the application must
   state the name of each owner or ,the policy will be void."
   Whether it was a violation of that provision to obtain insurance
   in the name of the widow alone, upon property which had
   descended to children of an intestate subject to the dower and
   homestead rights of the widow, not determined.
2. Knowledge on the part of the secretary of the insurance company,
   when writing the policy, of the actual state of the title, was an
   effectual waiver of the foregoing provision of the policy.
3. A finding by the jury that removal of the spark arrester and the
   subsequent operation of a steam engine for a few minutes with-
   out such arrester did not materially increase the risk of fire,
   is sustained in this case by the evidence, in which there was
   nothing to show that the removal of the arrester was the proxi-
   mate cause of the fire.
4. A clause in a policy insuring farm buildings, to the effect that
   "if the risk should be increased by any means whatever within
   the control of the assured, or be occupied in any way whatever
   so as to render the risk more hazardous," the insurance should
   be void, was not violated by the use on the premises, and within
   sixty feet of a barn in which the fire started, of a steam engine
   for the purpose of cutting ensilage.
5. Insurance must be presumed to be made with reference to the
   character of the property insured and to cover risks incident to
   its use in the ordinary way; and the clause above quoted has
   reference to some permanent change in the character or condi-
   tion of the insured property, not to a temporary change in the
   risk which is a mere incident to its ordinary use.
6. A clause in a fire insurance policy providing that the insurer
   shall not be liable for loss caused by the use of steam threshing
   machines unless certain specified precautions are taken, does
   not prohibit the use of steam thresher engines except for thresh-
   ing, nor on the other hand does it permit their use for other
   purposes without taking those precautions.

7. A provision in the policy that "in case of fire . . . or exposure to loss or damage thereby" the insured shall use their best endeavors.for saving and preserving the property, defines the duty of the insured after the property covered by the policy is on fire or menaced by a fire in its vicinity, and has no reference to acts or omissions preceding the fire.

8. It is within the discretion of the trial court, and entirely proper, to permit plaintiff to prove a material fact after defendant has rested, though not properly rebuttal, where proof thereof at the proper time was omitted through inadvertence.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

The plaintiff *Ida Siemers* is the mother of *Fred* and *Edward F. Siemers,* her coplaintiffs. F. A. Siemers, the husband and father, died intestate on March 29, 1896, leaving six children and the widow living. The estate was administered in the county court, and in 1900 the lands and personal property were assigned to the six children subject to the homestead and dower rights of the widow. The farm and personal property were occupied and used by the widow until December 1, 1903, when she leased the farm to her two sons who are her coplaintiffs herein. On December 11, 1903, the widow, by bill of sale, sold the farm machinery, grain, hay, and live stock to her two sons,•*Fred* and *Edward F. Siemers.* On July 28, 1903, said widow applied to the defendant company for a policy of insurance for a term of five years in the sum of $6,000 covering farm buildings, hay, grain, farm implements, live stock, and household goods, which policy was thereafter issued to the plaintiff *Ida Siemers.* The defendant is a town mutual insurance company. On January 18, 1904, the widow assigned her rights in the insurance policy to her sons *Fred* and *Edward F.,* except in so far as it covered buildings, household goods, wearing apparel, provisions, and musical instruments, which assignment was approved by the defendant. All of the buildings insured were located on the homestead forty.

On September 27, 1907, the plaintiffs *Fred* and *Edward*

*F. Siemers* were cutting ensilage, the power used to drive the feed cutter being a steam engine ordinarily used for the purpose of running a threshing machine. The smokestack of the engine where it was set in place was twenty feet distant from the nearest corner of an adjacent building. The engine was a wood burner. The fire occurred shortly after the workmen went into the house to dinner. Some minutes before quitting at noon, the plaintiff *Edward F. Siemers* took the spark arrester out of the smokestack of the engine and operated the same without the use of the screen or spark arrester, and left the engine with the spark arrester removed when he and the others went in to dinner. Very shortly after the parties went to dinner the fire was discovered in a barn about sixty feet distant from the smokestack of the engine. All of the farm buildings were destroyed and most of the personal property. On the trial there was no controversy as to the amount of the loss.

The defendant, after receiving notice of the loss, proceeded to investigate the same, all nine of its directors being present on the 27th day of September, 1907, when such investigation was being carried on. Some testimony was taken, and it was unanimously decided by the directors that the company was not liable for the loss because no watchman had been employed and because the spark catcher was removed from the engine while the same was in operation. On October 2, 1907, two of the plaintiffs were notified of such conclusion, the grounds stated in the letter of notification being that plaintiffs did not "comply with our by-laws, section 21, as to a watchman, and by removing the spark catcher while the engine was in operation."

The plaintiff *Ida Siemers* brought an action to recover the sum of $4,100 because of loss on the items of property insured in her name, consisting of the various buildings and household furniture, wearing apparel, and musical instruments. The plaintiffs *Fred Siemers* and *Edward F. Sie-*

*mers* commenced another action against the defendant to recover the sum of $1,900 because of the loss of certain personal property consisting of hay, grain, farming utensils, and live stock. The actions were consolidated. On the part of the defendant it was contended on the trial that it was not liable because (1) the property was not insured in the name of the owner as required by the terms of the policy; (2) because the risk was increased by placing and operating an engine at the time, in the manner, and for the purpose for which it was operated, in violation of the terms of the policy; (3) because the insured violated the clause in the policy requiring the insured to use their best endeavors for saving and preserving the property; (4) because the insured failed to keep a watchman around the engine as required by the terms of the policy.

The jury found (1) that at the time the policy in suit was issued William Fenn, the secretary of the company, who issued the policy, knew that the children of the plaintiff *Ida Siemers* were the owners of the lands on which the insured buildings stood, subject to her dower and homestead rights in said lands as widow; (2) that the removal of the spark arrester from the smokestack on the day of the fire, and the subsequent operation of the engine for a period of five or six minutes without the arrester, under the existing circumstances, did not materially increase the risk; (3) that the removal of such spark arrester and the subsequent operation of the engine while it was removed did not constitute failure on the part of the insured to exercise ordinary care; (4) that one Louis Voss acted for plaintiffs in the capacity of watchman in attendance to watch the engine during all the time it was in operation on the forenoon of the day on which the fire occurred.

On the verdict so returned, judgment was rendered in favor of the plaintiff *Ida Siemers* for $3,441.90 damages, with interest and costs, and in favor of the plaintiffs *Fred*

and *Edward F. Siemers* for $1,406, together with interest and costs. From the judgment so entered this appeal is taken.

For the appellant there was a brief by *Hougen & Brady,* and oral argument by *A. L. Hougen.* Upon the question of waiver they contended that the knowledge of the title possessed by the secretary, having been derived in previous transactions wherein he was not acting for the company, and in which it was not concerned, was not binding on the company, citing *United Nat. Bank v. German Ins. Co.* 71 Fed. 473; *Shaffer v. Milwaukee M. Ins. Co.* 17 Ind. App. 204, 46 N. E. 557; *St. Paul F. & M. Ins. Co. v. Parsons,* 47 Minn. 352, 50 N. W. 240; *Trentor v. Pothen,* 46 Minn. 298, 49 N. W. 129; *Ordway v. Chase,* 57 N. J. Eq. 478, 42 Atl. 149; *Phœnix Ins. Co. v. Flemming,* 65 Ark. 54, 67 Am. St. Rep. 900, 906; *Conn. F. Ins. Co. v. Smith,* 10 Colo. App. 121, 51 Pac. 170; *Keith v. Royal Ins. Co.* 117 Wis. 531; *Woodard v. German-Am. Ins. Co.* 128 Wis. 1.

For the respondents there was a brief by *Nash & Nash,* and oral argument by *A. L. Nash.*

BARNES, J.    1. The appellant contends that the policy of insurance became void because the following clause found therein was violated by the insured:

"All property must be insured in the names of all the owners, and the application must state the name of each owner or the policy will be void."

In this case the insured buildings, being a part of the homestead, descended to the widow during widowhood. Sec. 2271, Stats. (1898). Whether it was a violation of the terms of the insurance contract to insure the property in her name, rather than in the joint names of the widow and the remaindermen, is a doubtful question in view of the following cases decided in this court: *Johannes v. Standard*

*Fire Office,* 70 Wis. 196, 35 N. W. 298; *Vankirk v. Citizens' Ins. Co.* 79 Wis. 627, 48 N. W. 798; *Carey v. Liverpool & L. & G. Ins. Co.* 92 Wis. 538, 66 N. W. 693; *Schultz v. Caledonian Ins. Co.* 94 Wis. 42, 68 N. W. 414; *Davis v. Pioneer F. Co.* 102 Wis. 394, 78 N. W. 596; *Matthews v. Capital F. Ins. Co.* 115 Wis. 272, 91 N. W. 675; *Wolf v. Theresa Village Mut. F. Ins. Co.* 115 Wis. 402, 91 N. W. 1014; *Evans v. Crawford County F. Mut. F. Ins. Co.* 140 Wis. 189, 109 N. W. 952. It is unnecessary to decide the point.

The jury found that William Fenn, the secretary of the defendant company, who wrote the policy in suit, knew at the time the policy was written that the children of the plaintiff *Ida Siemers* were the owners of the real estate insured, subject to the homestead and dower rights of said plaintiff. Appellant's counsel vigorously attack this finding as not being supported by the evidence. The evidence was sufficient to warrant the jury in reaching the conclusion which it did reach. Mr. Fenn was a near neighbor of the insured for many years, and it would not be at all remarkable that he should know or be entirely satisfied as to where the title to the property rested, and he testified that as a matter of fact he did know when he wrote the policy. That such knowledge was an effectual waiver of the requirement of the insurance company, as regards title to the insured real property, is established beyond cavil. Many of the cases so holding are cited in *Metcalf v. Mutual F. Ins. Co.* 132 Wis. 67, 73, 112 N. W. 22. Other cases to the same effect are *McFetridge v. American F. Ins. Co.* 90 Wis. 138, 62 N. W. 938; *Goss v. Agricultural Ins. Co.* 92 Wis. 233, 65 N. W. 1036; *Schultz v. Caledonian Ins. Co.* 94 Wis. 42, 68 N. W. 414; *St. Clara F. Acad. v. Northwestern Nat. Ins. Co.* 98 Wis. 257, 73 N. W. 767.

2. It is next urged that by placing and operating the en-

gine at the time, in the manner, and for the purpose for which it was operated, the policy became void because the following provision of the insurance contract was violated:

"If . . . the risk should be increased by any means whatever within the control of the assured, or be occupied in any way whatever so as to render the risk more hazardous than at the time of insuring, such insurance shall be void and of no effect."

The contention is that the foregoing clause in the insurance policy was violated in two respects: (1) By running the engine for a few minutes without the spark arrester; and (2) because of running the engine at all for the purpose of cutting ensilage. The jury found that the risk was not increased because of running the engine without the spark arrester. There was very little evidence introduced on either side bearing on the question, and there is no evidence to show that the removal of the spark arrester was the proximate cause of the fire. This court would not be warranted in setting the finding aside.

The second objection presents a much broader proposition and necessitates a construction of the policy. There was no direct evidence in the case as to what caused the fire. The inference is strong that the steam engine was responsible for it. If so, if the engine had not been operated, the fire would not have occurred. Therefore, by operating the engine, the plaintiffs increased the fire hazard and they cannot recover. Such is the construction which the defendant now places on its contract, although it did not so construe it when it declined to pay the loss, and such is the construction which it asks the court to place thereon. The provision is one commonly found in policies of insurance, and is in substance embodied in the standard fire insurance policy adopted by the legislature of Wisconsin. Sec. 1941—46, Stats. (1898). People insure against their own negligence as well as that of their neighbors, and against those untoward events which hu-

man foresight is unable to prevent. Farmers have little to apprehend in the way of fire hazard from neighboring property. Their losses occur from accidental causes which cannot be avoided and from acts of omission or commission on their part which might have been guarded against. It is safe to say that by far the larger proportion of losses occur from the causes last named. If a fire is started by reason of an additional stove being set up after a policy is written, or by reason of the lighting of a match or the building of a mosquito smudge, or the use of a kerosene lantern around outbuildings, has the insured increased the risk by a means within his control and thus forfeited his right to recover? Owners of farm property hardly understand that by insuring their property they are debarring themselves of the right of carrying on their operations in the ordinary way.

Fire hazard is a variable quantity. It changes constantly from day to day, and sometimes imperceptibly, from the operation of the laws of nature and from various circumstances beyond the control of the insured. Such influences must, in general, unless unusual or extraordinary, be considered as a necessary part or incident of the risk which the insurer has undertaken to bear. It is not to be supposed that the insured has guaranteed that no improvements or changes shall be made anywhere in the vicinity of the insured property during the life of the insurance, but it is reasonable to exact an obligation from him that he shall not allow or permit a change to be made in the structure, nature, or habitual use of the insured property materially different from that which the insurer has agreed to undertake. Richards, Ins. (3d ed.) p. 329. But trivial or temporary variations in the risk incident to the ordinary use of the insured property are presupposed by the contracting parties to be likely to occur. *Kircher v. Milwaukee M. Mut. Ins. Co.* 74 Wis. 470, 43 N. W. 487. Insurance must be presumed to be made with reference to the character of the property insured and to the

owner's use of it in the ordinary way and for the purpose for which such property is ordinarily held and used, or to cover risks incident to such use.    1 May, Ins. (4th ed.) § 219, and cases cited.

It is a matter of common knowledge that cutting fodder by hand, horse, steam, or gas engine power is a very customary operation on farms.    We think that when the contract was made it was fairly within the contemplation of the parties that such work might be carried on, and that a steam engine might be employed in doing such work unless its use was specifically forbidden by the policy, and that the court committed no error in refusing to submit a question to the jury asking whether the risk had been increased by its use. The clause in question has reference to some permanent change in the character or condition of the insured property, and not to a temporary change in the risk, which was a mere incident to the ordinary use of the property.

We think the position of the appellant is not sound for another reason.    The policy expressly provided that the company should not be liable for loss caused by the use of steam threshing machines unless (1) a ladder was kept between the engine and the separator; (2) one barrel of water and two pails were kept between the engine and the barn ready for use; and (3) a watchman was always in attendance to watch the engine during its operation.    The policy of insurance should be liberally construed in favor of the insured, particularly when a strict construction would work a forfeiture.    *Redman v. Hartford F. Ins. Co.* 47 Wis. 89, 1 N. W. 393; 19 Cyc. 656, 657, and cases cited.

It is apparent that the hazard which the defendant sought to minimize was the use of steam engines around farm buildings.    While the policy uses the words "steam threshing machines," yet, taking the provision as a whole, we think it was its intent and meaning that steam threshing machine engines should not be employed in the ordinary operations carried on around farm buildings unless the required precau-

tions were taken.    This is a fair construction of the policy
to the insured and the insurer.    It seems to be acquiesced in,,
to some extent at least, by counsel for the appellant, as it is
urged as one of the grounds of error that no recovery can be
had because the required precautions were not taken.    The
converse of the proposition stated would be, not that the use
of steam engines was forbidden for other purposes than
threshing, but that as to other kinds of work which might be
done by them the precautions stipulated for in the policy
need not be adopted.

3. It is next claimed that the plaintiffs violated the fol-
lowing clause in the insurance policy: ·

"In case of fire . . . or exposure to loss or damage thereby,
it shall be the duty of the insured to use their best endeavors,
for saving and preserving the property."

The contention is that by taking off the spark arrester the
plaintiffs did not comply with the foregoing requirement.
It is manifest that this provision defines the duty of the in-
sured when the property covered by the policy is on fire, or
when it is so menaced by fire in its vicinity that damage is
likely to result.    In such a case the policy-holder is obli-
gated to minimize his damages by using all reasonable efforts,
to prevent unnecessary loss.    The insured did their full duty
under this clause by saving all of the insured property that
they could after they discovered the fire.

4. It is further urged that the insured violated the condi-
tions of the policy by failing to keep a watchman, a barrel of
water and pails, and a ladder as provided thereby.    The
jury found on sufficient evidence that a watchman was em-
ployed as required by the policy.    The evidence to show that
a ladder, an abundance of water, and the prescribed number
of pails were provided as required was convincing and was
uncontradicted, and as to such requirements the evidence pre-
sented no controversy and no issue was raised for the jury to
pass upon.

5. It is also argued that the court erred in permitting the

plaintiffs to introduce evidence that was not rebuttal after the defendant rested. In view of the fact that the evidence showed the condition of the title before plaintiffs rested their case in chief, it was incumbent on them to show a waiver of the forfeiture before resting rather than after the defendant rested. This they did not do. But it was entirely proper for the court to permit the evidence to be offered later. Courts are established for the purpose of getting at the rights of the parties who come before them with controversies, and such rights should not be defeated by technical rules. It is necessary that the trials be carried on in an orderly way. However, where counsel, through some inadvertence, fail to prove some vital fact at the proper time, the client should not be turned out of court because of such failure if he in fact has a meritorious cause of action.

*By the Court.*—Judgment affirmed.