# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

HARVARD LAW SCHOOL LIBRARY

WESTERN DISTRICT—PITTSBURG 1866.

## The Pennsyıvania Salt Manufacturing Company *et al. versus* Neel.

1. Questions were reserved and after verdict there was a motion for a new trial; entering judgment on the reserved questions was substantially overruling the motion without distinct action on it.

2. The action was for injury to the reversion in taking out coal and turned upon the title to the coal: a lessee of the surface was a competent witness for plaintiff.

3. A conveyance by husband and wife directly to her use, when not in fraud of creditors is sustainable in equity in this state, although in a common-law action.

4. An objection that the title was not sufficiently set out in the *narr.* avails nothing after verdict; it was amendable and will be regarded as amended after trial on the merits.

5. Clarke in 1832 conveyed coal under his land to Kennedy; the deed was recorded in December 1834. Neel bought the *land* by articles in February 1834, took possession, and paid all the purchase-money, before he had notice of Kennedy's title; his articles were not recorded; the land was conveyed in 1835 and recorded in 1836. *Held*, that the title of Kennedy had precedence.

6. The receipt in a deed for the consideration is good against the grantor and those deriving title subsequently from him.

7. A subsequent purchaser to be first in right against a prior purchaser must be first on the record; payment of purchase-money and possession with improvements are not savings in favor of a subsequent purchaser, under the 5th section of Act of 1775.

ERROR to the District Court of *Allegheny county*.

This was an action on the case by Eliza Jane Neel against the Pennsylvania Salt Manufacturing Company and others, brought to January Term 1866.

(9)

[Pennsylvania Salt Manufacturing Co. *v.* Neel.]

The plaintiff declared that she was the owner of a tract of land, "including a stratum or vein of coal, and other minerals therein, which was in the possession and occupation of one Thomas Neel, as tenant thereof to the said Eliza Jane Neel, the reversion thereof being on the termination of the tenancy" in her, and that the defendants, without license from her, and against her will, broke into the premises, and dug out a large quantity of coal, &c.

The land, containing 75 acres, lying near Tarentum, on the Allegheny river, originally belonged to one Clarke, who, about 1831, laid out about 25 acres of it in 5 acre lots, fronting on the Pennsylvania Canal, and running back from it, and sold them to different persons, for the purpose of sinking salt-wells. On the 13th of March 1832, Clarke, for the consideration of $89, conveyed one of these lots to John Kennedy : and on the same day, by deed reciting that " in consideration of the sum of $10 to me in hand paid by John Kennedy, the receipt whereof by me is hereby acknowledged," conveyed to Kennedy, " his heirs and assigns, the privilege of digging stone coal and penetrating the hill under my land from and opposite a certain five acre lot recently purchased from me by the said Kennedy and James Lesly, No. five. Said Kennedy is to have the privilege of digging and taking out coal anywhere within the course or bounds of my line to the extent of the same opposite his aforesaid lot. Reserving only the privilege of taking out coal for my own fuel." Both these deeds were recorded December 24th 1834, and the titles conveyed by them are in the Pennsylvania Salt Manufacturing Company in fee.

On the 26th of February 1834, Kennedy's deeds being then unrecorded, James C. Neel, husband of the plaintiff, entered into articles of agreement with Clarke for the purchase of the 75 acres of land for $745, of which $150 was to be paid in hand, and the remainder in annual payments of $100 each. The hand-money was paid : the articles were never recorded. The digging of the coal was alleged to be on this land. There was evidence that Clarke delivered possession on the 1st of April 1834, in accordance with the article, that Neel rented it out, and it was farmed as is usually done, all the purchase-money but a mortgage created by Clarke having been paid. On the 10th of January 1835, Neel being still in possession by his tenants, Clarke conveyed the 75 acres to Neel : the deed was recorded April 2d 1836. On the 26th of July 1845 Neel and wife (the plaintiff), in consideration of " natural love and affection, and divers other good and valuable considerations," conveyed the land " to the said Eliza Jane Neel in trust nevertheless, and upon this special trust and condition to have and to hold the same for her own proper use, benefit and behoof during her natural life, with the right

to use and occupy the same, the rent, issues and profits thereof, during her natural life as aforesaid, and after the death of her, the said Eliza Jane Neel, the same to be to the exclusive benefit, use and behoof of the children of the said James C. Neel in fee simple for ever." This deed was recorded the same day.

On the trial, Thomas Neel, who was a lessee from the plaintiff of the 75 acres, without right to mine, was offered by the plaintiff as a witness, objected to on account of interest, but admitted and exception taken.

The deed of James C. Neel to his wife being offered by the plaintiff, was objected to, received and excepted to by defendant.

There was conflicting evidence as to whether Neel had notice of the grant of the coal before he purchased and paid his purchase-money, which was submitted to the jury as a question of fact.

The court instructed the jury *pro formâ*, 1. That the plaintiff could maintain the action. 2. That the Statute of Limitations would not give the plaintiff a good title to the coal. 3. That the receipt in defendant's deed is sufficient evidence to constitute them bonâ fide purchasers. 4. If the jury found that Neel " purchased, by articles of agreement of the 26th of February 1834, and entered into possession under said article, paid the purchase-money, cleared and fenced land, before he had any notice of Kennedy's title, the plaintiff will be entitled to recover." The questions on these four points were reserved.

There was a verdict, May 25th 1866, for the plaintiff for $15, subject to the reserved questions.

There was a motion for a new trial, and reasons filed, with leave to add or amend after charge filed. On the reserved questions, Hampton, P. J., delivered the opinion of the court, September 8th 1866.

On the 4th reserved question, after stating that the jury had found that Neel had no notice of Kennedy's title before he purchased, paid his purchase-money, &c., he said : " Was Neel a bonâ fide purchaser, and if so, will his title prevail over Kennedy's ?

" A bonâ fide purchaser of land is one who, in good faith, has purchased for a valuable consideration, and paid the purchase-money, without notice of any secret trust, encumbrance, or defect of title. In this case the jury have found that James C. Neel so purchased, and paid the purchase-money, before he had any notice, actual or constructive, of Kennedy's title, under which the defendants claim. On the trial, it was contended by defendants that the hand-money only, viz., $150, was paid before notice, but that the deferred payments were not made until after Kennedy's deed was recorded, or until after Neel had notice of his title.

" The evidence on this subject was conflicting, and the jury were left to decide the question. They have found that fact in favor of the plaintiff, and it is now to be taken as true. What,

then, was the legal status of the two parties, at the time Kennedy placed his deed on record? Kennedy's deed was dated and acknowledged the 13th of March 1832; the consideration mentioned in it was $10, which was receipted for at the foot; and it was not recorded till the 24th of December 1834, more than two years and nine months after its date.

" No act of ownership was ever attempted to be exercised under that deed, from that time till the fall of 1865, a period of more than thirty-three years.

" On the 26th of February 1834, two years all but a few days after the date of that deed, and Clarke, the original owner of the land and coal, being apparently in the possession of both, Neel entered into an article of agreement with him for the purchase of the entire estate, without any reservation of the coal, for $10 an acre, amounting to about $750, of which $150 were to be paid in hand, and the residue to be secured by bond and mortgage. In addition to this, Neel was to pay a mortgage which was a lien on the land, and was to have possession the 1st of April 1834.

" In the fall Neel paid him the remaining portion of the purchase-money, by obtaining a suitable deduction. All this took place, as the jury have found, before Kennedy's deed was recorded, and before Neel had any actual notice of his title or claim to the coal in dispute.

" On the 27th of January 1835, or about one month and three days after the recording of Kennedy's deed, Clarke acknowledged and delivered to Neel the deed for this land in accordance with his agreement. This deed bears date the 10th of January 1835.

" Instead of this being a deed to Kennedy for the coal, suppose it had been a conveyance of the fee simple to the whole tract of land, and he had neither recorded his deed, taken possession, nor done any other act to give notice of his title for ·nearly three years; and, in the mean time, while Clarke was still in possession, Neel had purchased and paid the consideration, as he did, and entered into possession, would it be pretended that he was not entitled to the protection afforded to a bonâ fide purchaser? It is too well settled in this state to need the aid of authority, that a party may either recover or defend in an action of ejectment, upon an equitable title, notwithstanding the legal title may be in his opponent.

" Neel was in no default, but Kennedy was. To permit him to carry his deed in his pocket for more than two years, without placing it on record, or doing any other act to give notice of his title, while Neel made his purchase, and paid his money in good faith, and then allow him afterwards to assert and maintain it, would be a gross fraud on Neel, such as no law would countenance for a single moment. Having failed to prove on the trial, by any other evidence than the receipt in the deed, the payment

[Pennsylvania Salt Manufacturing Co. *v.* Neel.]

of the consideration, it is well settled he had no equity, and was obliged, therefore, to stand upon his naked legal title, which, as between him and Neel, who was an innocent purchaser, is postponed, by his own *laches*, to the superior equity of the latter. And if his legal title to the whole tract, in the case we have supposed, would not avail him, why should his deed for the coal merely, place him in any better position? After having paid the purchase-money, Neel could not sue Clarke on his covenant of warranty, until he was ousted by title paramount, which was not attempted for more than thirty years.

"In the mean time, Clarke is dead many years ago, and his estate, if he had any, of which there is no evidence, has long since passed into other hands; and this coal, which was then worth but a trifle, having been sold for the nominal sum of $10, has become of immense value.

"To sustain a title of this character under such circumstances, would not only lead to gross injustice, but create universal distrust and alarm in the community.

"It was contended on the trial that the payment of the purchase-money, without the conveyance of the legal title, was not sufficient to constitute Neel an innocent purchaser without notice. But this question was settled by the Supreme Court, nearly half a century ago, in Youst *et al. v.* Martin, 3 S. & R. 423, in which it was not only held that one who had paid the whole purchase-money, but had not recorded his deed, was to be protected; but that, where only a part had been paid, and possession taken, before notice of an equitable claim under an agreement not recorded, in one who had been guilty of negligence, the latter could not recover the land, without repaying the money paid by such purchaser before receiving notice. And this doctrine has prevailed ever since: see 8 S. & R. 493; 12 Id. 378; 1 Wh. 432; 10 Watts 29; and numerous other later cases."

The judge, after quoting from the opinions of Tilghman, C. J., and Gibson, J., in Youst *v.* Martin, says:—

".I have quoted thus extensively from the opinions of those two eminent jurists, because their reasoning is much more cogent than any argument I could use. The rule laid down in that case is sufficiently broad and comprehensive to cover the case now under consideration, although the facts are not exactly the same. In that, only part of the purchase-money was paid before notice, while in this the whole was paid. In that case the plaintiff had only an equitable title, in this the defendants have a legal title. In that the party sought to be ousted had been in possession about fifteen years, while in this the possession has been uninterrupted for more than thirty years. The payment of the whole of the purchase-money in this case, before notice, certainly adds great force to the rule thus laid down, and I can perceive no reason why a

[Pennsylvania Salt Manufacturing Co. *v.* Neel.]

naked legal title, when the holder has been guilty of gross negligence by which the other party was induced to buy and pay his money, should be any more available than an equitable title. Both should stand on the same footing, and be subject to the same rules in our courts, where, in the administration of justice, law and equity are blended together. And this position is fully sustained by Mr. Justice Rogers in Bellas *v.* McCarty, 10 Watts 25.

"For these reasons I am of opinion that Neel was a bonâ fide purchaser, and as such entitled to protection.

"But it contended that because Kennedy's deed was recorded before Neel's, the latter is to be postponed, and his equity disregarded. It has been held in several cases that where there are two deeds of conveyance, of different dates, from the same grantor to different persons, neither of which is recorded within six months, that which is first recorded will take priority. But possession of the land by the grantee is equivalent to recording his deed: Lightner *v.* Mooney, 10 Watts 407. This rule must undoubtedly receive a rational construction and application. I cannot conceive what legitimate bearing the recording of either of these deeds can have on this case. Kennedy's deed was recorded before Neel's, it is true, but as the jury have found, not until after Neel had paid the whole of the purchase-money. Neel might have recorded his article of agreement when it was executed, but what benefit would that have been to Kennedy, who had paid his purchase-money, if indeed he ever paid it, at the date of his deed? I take it our recording acts were intended to give notice to all concerned as to the ownership of land, so that the public authorities may assess and collect the necessary taxes, and that purchasers may understand the character of the titles they are to receive, or may be notified that their title is defective before they shall have paid all the purchase-money. Thus, if A. sells and conveys a tract of land to B., receives a portion of the consideration in hand, and takes bonds and a mortgage for the residue, payable in instalments, and B. neglects to record his deed within six months, and A. sells the same land to C., who pays his purchase-money and records his deed within six months, his title is preferred to B.'s, because by B.'s laches in not placing his deed on record C. was induced to buy and pay his money, and by promptly recording his deed B. may set up the deed to C. as a defence to an action for the residue of the purchase-money, and recover back what has been paid, so the taking possession by C. under his deed would serve the same purpose as recording it, by giving notice that he claimed the land; and if C., the second purchaser, owed any portion of the purchase-money when B. recorded his deed, he could in like manner defend as to that portion remaining unpaid. But under the authority of Youst *v.* Martin and the other cases hereinbefore referred to, I apprehend

B. would not be permitted to recover the land from C. without reimbursing what had been paid by him before he had received notice of his title.

"Now, if these rules be correct, how will they apply to the question under consideration? Kennedy's deed is dated the 13th of March 1832, at which time the receipt for the purchase-money is dated. There were no deferred payments. It was not recorded till December 24th 1834. Of course the recording of Neel's article of agreement, or deed, if he had one, would have been of no sort of benefit to Kennedy, in the way of defence to an action for deferred payments. He was, therefore, in no way injured by Neel's neglect. On the other hand, Neel purchased on the 26th of February 1834, went into possession on the 1st of April, and paid the whole of the consideration before he had any notice of Kennedy's title. And now, if that title is to prevail, Neel will lose this valuable body of coal, without any want of care, caution or good faith on h  · part, but entirely through the negligence of Kennedy, who will be allowed to take advantage of his own wrong, to the great damage of an innocent purchaser. To such a principle I cannot give my assent.

"I am, therefore, of the opinion that the fact of Kennedy's deed being first recorded cannot affect this case, and that the plaintiff is entitled to judgment on the verdict."

The assignments of error were:—

The court below erred,

1. In entering judgment for the plaintiff on the questions reserved, without having disposed of the motion for a new trial, and without having given defendants opportunity to file additional reasons for a new trial, after charge filed, and giving them a hearing thereon.

2. In overruling the objections to Thomas Neel, as a witness for plaintiff.

3. In admitting in evidence the deed from James C. Neel and wife to the wife.

4. In rendering judgment for the plaintiff below on the first question reserved.   :   ·ᵢ

5. In rendering judgment for the plaintiff below on the fourth question of law and fact.

6. In charging the jury that if Neel "purchased by articles of agreement of the 26th of February 1834, and entered into possession under said article, paid the purchase-money, cleared and fenced land before he had any notice of Kennedy's title, the plaintiff will be entitled to recover."

7. In not instructing the jury on the distinction between possession of the surface and possession of the coal, after the owner had severed them by separate conveyances.

8. In submitting to the jury the question of possession by Neel,

[Pennsylvania Salt Manufacturing Co. v. Neel.]

when there was no evidence that Neel or those claiming under him ever had possession of the coal in dispute.

9. In not instructing the jury as to the effect of constructive notice of Kennedy's title by the recording of his deed, before Neel paid all of the purchase-money or received his deed, as distinguished from actual notice.

*W. Bakewell* and *J. Veech & Son*, for plaintiff in error, cited, as to the plaintiff's right to maintain the action, Stickney *v.* Borman, 2 Barr 67; Benedict *v.* Montgomery, 7 W. & S. 238–242; Dunbar *v.* Jumper, 2 Yeates 74; Funk *v.* Arnold, 3 Id. 428; Musgrove *v.* Gibbs, 1 Dallas 236; Scott *v.* Horn, 9 Barr 407; Geddis *v.* Irvine, 5 Id. 508; Irwin *v.* Covode, 12 Harris 162; Neel *v.* Neel, 7 Id. 323; Act 10th April 1848, § 1, Purd. 1008, pl. 5, Pamph. L. 472; Peterson *v.* Lothrop, 10 Casey 229; Chambers *v.* Lapsley, 7 Barr 24; Truby *v.* Seybert, 2 Jones 102; Goundie *v.* Northampton Water Company, 7 Barr 238; 2 Saunders on Pleading and Evidence 258. As to the question whether Neel's paying purchase-money, &c., without notice of Kennedy's title would enable the plaintiff to recover, Ebner *v.* Goundie, 5 W. & S. 49; Goundie *v.* Northampton Water Company, *supra*; Lightner *v.* Mooney, 10 Watts 412; Caldwell *v.* Fulton, 7 Casey 475; Caldwell *v.* Copeland, 1 Wright 430; McCulloch *v.* Cowler, 5 W. & S. 429; Poth *v.* Anstatt, 4 Id. 310; Bryce *v.* McCulloch, 3 Id. 434; Hood *v.* Fahnestock, 1 Barr 473; McLanahan *v.* Reeside, 9 Watts, 511; Lewis *v.* Bradford, 10 Id. 82; Boone *v.* Chiles, 10 Pet. 212.

*T. MacConnell* and *R. Wood*, for defendant in error, cited Stickney *v.* Borman, 2 Barr 67; Benedict *v.* Montgomery, 7 W. & S. 238; Jackson *v.* Brooks, 8 Wend. 426; Doe *v.* Maisey, 1 B. & Ad. 439 (20 E. C. L. R.); Caldwell *v.* Copeland, 1 Wright 427; Caldwell *v.* Fulton, 7 Casey 475; Act of May 28th 1715, § 5, Purd. 321, pl. 74, 1 Smith's Laws 95; 2 Bl. Com. 211; Lloyd *v.* Lynch, 4 Casey 419; Coxe *v.* Sartwell, 9 Harris 480; Union Canal Company *v.* Young, 1 Whart. 432; Bolton *v.* Johns, 5 Barr 151; Kidder *v.* Boom Company, 12 Harris 193; Thomas *v.* Thomas, 9 Id. 318.

The opinion of the court was delivered, January 22d 1867, by
THOMPSON, J.—1. It was but a slight irregularity to enter judgment on the reserved questions before overruling the pending motion for a new trial. The entry of the judgment substantially and effectually overruled it. If it were necessary to the regularity of the record, it might be done at any time *nunc pro tunc.* This assignment of error is therefore not sustained.

2. Nor was the admissibility of Thomas Neel, as a witness for

[*Pennsylvania Salt Manufacturing Co. v. Neel.*]

plaintiff, questionable. He had no interest in the subject-matter of the controversy; he had a lease of the surface land under which the coal was found, but he had no right to mine it, there being no opening on the leased premises through which he could do so, and no right, by virtue of his lease, to open a drift or entrance for such purpose. Nor can we conceive of any possible contingency connected with his possession in which the verdict could be evidence for or against him. He was disinterested, therefore, and properly a witness.

3. A conveyance by husband and wife directly to her own use, when not in fraud of creditors, is sustainable in equity, and has always been so held in this state on equitable principles, although the action might be a common-law action: 6 Wh. 571; 8 Wright 43; 3 Atk. 72. The defendants were not claiming as creditors, nor under the husband, and had no right to question the plaintiff's deed for the reason assigned. There was no error in admitting it in evidence.

The objection that it was not sufficiently set out in the *narr.* avails nothing after verdict. It is too late then to make it. The matter was clearly amendable, and it will be regarded as amended after trial on the merits. This error is not sustained.

4. The main point in the case has been treated by both sides as raised by the judgment of the court on the fourth reserved question, namely, the effect of the possession and improvement of the plaintiff's husband, as against a prior deed of his grantor, in part for the land embraced in his purchase, of which he had no notice; not recorded within six months, but recorded before his deed.

The defendants claim the coal under the land of the plaintiff through a deed from one Clark, under whom the plaintiff also claims by deed dated before the inception of plaintiff's title, recorded afterwards, but before plaintiff's deed from the same grantor was recorded. It was first in date and first on record. The plaintiff seeks to avert the effect of this by relying on a purchase, payment of the purchase-money, possession and improvements made in ignorance of the defendant's prior deed, and contends that for these reasons her title is best, although recorded last.

The severance of minerals in land by a separate conveyance of them, is a doctrine clearly announced in the two cases of Caldwell *v.* Fulton, 7 Casey 475, and in Caldwell *v.* Copeland, 1 Wright 429. Such a conveyance from Clark the defendants have. It is a conveyance to their grantor of all the coal in the land, tested by the doctrine of the cases referred to, excepting only a reservation to the grantor for fuel for himself. We have therefore, first, a grant by Clark by deed of the coal to Kennedy; and secondly, a sale and deed of the land containing it to Neel the plaintiff's grantor, without notice, as the jury have found, of the severance.

4 P. F. SMITH—2

HARVARD LAW SCHOOL LIBRARY

and conveyance of the coal to Kennedy. The ordinary effect of a deed gives seisin of lands, " *cujus est solum, ejus usque ad cœlum.*" It would carry all the minerals to an indefinite extent downwards under the land as well as the surface. There is therefore a deed to one party for the coal in the land by a party who owned both land and coal, and a subsequent deed generally, and without reservation to another of the land. The subjects of these grants until severed formed a unit; after, they were distinct parts or separate properties, as much so as the divided portions of what was once a single tract of land. The effect of these conveyances we are required to determine.

By the recording Act of 1775, a deed not recorded within six months is declared to " be fraudulent and void against any subsequent purchaser or mortgagee for a valuable consideration, unless such deed or conveyance be recorded as aforesaid, before the proving and recording of the deed of conveyance under which such subsequent purchaser or mortgagee shall claim."

No doubt can possibly exist but that the deed to Neel was for a valuable consideration. He paid for it $745. Had he been first on record his title would have unquestionably prevailed over that of Kennedy, under which the defendants claim, unless there had been notice before payment of the purchase-money of its existence. The counsel for the defendant in error, to meet the difficulty which they must encounter from the recording act cited, contend that the conveyance to Kennedy by Clark was not bonâ fide and for a valuable consideration; and secondly, that the purchase by Neel, made in ignorance of a prior conveyance of any part of the property, the payment of the purchase-money, possession taken and improvements made, were equivalent in their effect to recording his title, and so satisfied the terms of the statutes.

We will notice the first of these positions briefly. The deed of Clark to Kennedy is dated 13th March 1832, and recites the consideration to be $10, and in the body of the deed the receipt of it is acknowledged. In the argument of the defendant in error, it is claimed that this acknowledgment is no evidence of payment. Granting that the payment of a consideration is necessary to give effect to a deed of bargain and sale, as was said in Boardman *v.* Dean, 10 Casey 252, is not such an acknowledgment evidence against a subsequent purchaser from the grantor who made it? In Lloyd *v.* Lynch, 4 Casey 419, this point is expressly ruled against the defendant in error. It was there held that the receipt in a deed was good against the grantor, and all who derive title *subsequently* from him, but *no* evidence against a stranger, or one who derived title previously from the grantor. I need not stop to inquire how far this is without exception as to strangers; even those who might contend against the doctrine to that extent,

·will admit its accuracy as to parties and privies. The other cases referred to of Coxe *v.* Sartwell, 9 Harris 480, Canal Co. *v.* Young, 1 Wh. 432, and Bolton *v.* Johns, 5 Barr 151, in no way impugn the qualification as to the effect of the receipt upon a subsequent purchaser from a grantor who had previously conveyed, but virtually support it. The position of the defendant in error, as to the effect of the receipt in the deed, as these parties stand, is not sustained. Nor can we hold the consideration to be nominal merely, and therefore to be presumed not to have been paid. In 1832 the coal was undoubtedly considered of little value at that place. We see that the fee simple of the five acres and allowance at the foot of the hill, and located along the Pennsylvania Canal, brought only $89. Besides, it appears that the right to coal was to be a condition of the purchase of the five acres, which was intended as a site for salt-works; and thus was the value of the five acres enhanced.

Is the second position assumed by the defendants' counsel sufficient to avert the consequences of the priority of recording the deed to Kennedy? The learned judge thought the facts embodied in the position were sufficient. Payment of purchasemoney, and possession with improvements made, are not regarded by the terms of the statute quoted, as savings in favor of a subsequent purchaser. The plain teaching of the act is, that in order to be first in right against a prior purchaser's deed, the subsequent purchaser must be first in time on the record. We have many decisions to this effect in our books, such as Lightner *v.* Mooney, 10 Watts 407 ; Poth *v.* Anstatt, 4 W. & S. 307 : Ebner *v.* Goundie, 5 Id. 49 ; Hetherington *v.* Clark, 6 Casey 393 ; Souder *v.* Morrow, 9 Id. 85, in which Lowrie, C. J. said, " Purchasers ought to know that they have only a conditional title dependent on the honesty of their vendors, so long as they neglect to record their deeds. They are not safe, merely because of the neglect of a former purchaser to record within six months, and there being no subsequent deed to oppose them, but because among several deceived purchasers they are first to obey the law." Nor does the possession by the subsequent purchaser and the making of improvements alter the case, or change the necessity for recording the deed to render the title effective against the first purchaser's deed if recorded first. This is clearly shown by some of the cases already cited, and especially in Goundie *v.* The Northampton Water Company, 7 Barr 233, Mott *v.* Clark, 9 Id. 405, and Ebner *v.* Goundie, 5 W. & S. *supra.* It is therefore evident the defendant in error is not protected by force of the second position, and that her possession by or under her husband, and improvements made, will not avail against the first deed first recorded. No equitable ground or aspect has been presented to modify or change this result in this argument. The plaintiff's grantor, it is

not claimed, was induced by any positive acts of those under whom the defendants claim, to invest her money in this property; if a loss, therefore, is to ensue under these circumstances, it is the consequence of supineness in not obeying the requirements of the statute, to have deeds on record earlier. It is no answer that his contract might not sooner have entitled him to it. He should have made a contract that would have entitled him; if he did not, he voluntarily risked the consequence of the faithlessness or dishonesty of his vendor, and his recourse would be against him on his covenants for title.

The argument of the counsel for the defendant in error, may be accurate as to the effect of a feoffment without livery of seisin; that it would be a title at will which it would confer, determinable by a subsequent grant with livery, but this is answered by the statute of 1775 itself. In the one case, the first grant is dead as against a subsequent one with livery of seisin. In the other it is not so absolutely, but contingently dependent on the last deed being first recorded.

It follows from these views that the instruction *pro formâ* in the charge, and the subsequent judgment on the fourth reserved points, are erroneous, and for this the judgment must be reversed.

We see nothing to correct in any of the other assignments not noticed. The counsel for the defendant in error claim that the charge against them on the Statute of Limitations was erroneous. Whether this be so or not, we cannot say. It is not before us, but in order that that, or any other matter not passed upon in this case, may be investigated and determined, we will not enter judgment on the reserved question, but reverse generally, and let the case be again tried if the plaintiff below thinks she can make any better case out of it.

Judgment reversed, and *venire de novo* awarded.