# G. C. RICHARDS ET UX. v. BUFFALO ETC. R. CO.

## APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF MERCER COUNTY.

Argued October 16, 1889—Decided June 4, 1890.

1. When a railroad company enters upon land to construct its road, without acquiring the land under the right of eminent domain, but relying upon the grant of the right of way from an alleged owner, a subsequent grantee of the real owner may afterwards maintain ejectment against the company. The action is not personal to one who owned the land when it was so taken.
2. If the agent of the company, at the time he procured the grant for the right of way, knew that another than the grantor had title to the land, the real owner, though by his words or silence he may have encouraged the execution of the grant and allowed the company to construct and operate its road for years without objection, is not estopped from subsequently asserting title.
3. Where, in such case, the real owner subsequently brings ejectment against the railroad company for the land occupied, and there is submissible evidence that the company's agent had knowledge of the plaintiff's title when he procured the grant of the right of way, binding instructions to find for the defendant would be error.
4. Upon recovery by the plaintiff, in such action, and the subsequent affirmance of the judgment, the Supreme Court will order the execution thereof to be stayed for a sufficient time to enable the railroad company to condemn the right of way under its power of eminent domain.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 30 October Term 1889, Sup. Ct.; court below, No. 109 June Term 1887, C. P.

On May 27, 1887, G. C. Richards and Anna R., his wife, in the right of said wife, brought ejectment against the Buffalo, New York & Phila. R. Co., for a strip of land in Jackson township, Mercer county, occupied by the defendant for its right of way. Issue. Subsequently, the name of the Western N. Y. & Pa. R. Co. was added as a defendant.

At the trial on May 16, 1888, both parties claimed title through one Samuel Pew, in whom it was agreed that title

was vested on and prior to February 2, 1866. None of the instruments or mesne conveyances by which Elizabeth Cousins, plaintiffs' grantor, obtained her title from Samuel Pew, were recorded at the time when the railroad company secured its grant of right of way from Samuel Pew. The facts sufficiently appear in the opinion of the Supreme Court.

At the close of the testimony, the court, MEHARD, P. J., charged the jury in part as follows:

The defendant has submitted the following points:

1. That, the plaintiffs' testimony having shown that Elizabeth Cousins was the owner of the land over which the defendant's road was constructed, at the time the same was appropriated by them for the purpose of their road and for ten or eleven years thereafter, there can be no recovery in this case, for the reason that, as shown by the evidence, the defendant company entered upon the land in controversy and constructed its road without opposition from the owner; and this being an appropriation of the land, the right of action, if any existed, was in Elizabeth Cousins and not in the plaintiffs.

Answer: We do not understand that this would have been an appropriation of the land under the right of eminent domain vested in the defendant company, and for that reason this request is refused.[1]

2. If the jury find from the evidence in the case that Elizabeth Cousins was the owner of the land in controversy, at the time the same was appropriated by the defendant company; that she was present when her father, Samuel Pew, settled the right of way with W. E. Loy, the agent of the company, and either authorized him to make said settlement, or afterwards by her silence permitted or encouraged the defendant to make valuable improvements upon the land, then she and those claiming under her are now estopped from setting up title, and there can be no recovery in this case.

Answer: If you find from the evidence that, at the time the defendant and Samuel Pew made the contract shown by the instrument dated March 26, 1874, Elizabeth Cousins was present, and was aware that the railroad company, through its agent, Mr. Loy, was about to take the grant of a right of way for the railroad company over the land in suit, and encouraged

Charge of Court below.

the making of this contract either by her words or by her silence; that she thereafter permitted the railroad company to pay the consideration mentioned in the writing and construct its road on said land, without disclosing to the railroad company the true state of the title, then she and her successors in title would be estopped from setting up her title as against defendant's right of way, and the plaintiffs could not recover, unless you find that the agent of the railroad company had knowledge at the time of the title of Elizabeth Cousins. If you find that the agent of the company knew, at the time he took the grant from Samuel Pew, that Elizabeth Cousins was the owner of a part of the land embraced in the grant, and that the part in controversy here, there would be no estoppel. In other words, if the railroad company knew the truth, at the time they took the grant, the plaintiffs would not be estopped from showing the truth now. Thus explained, this request is affirmed.[2]

3. That, under the law and the testimony in the case, the plaintiffs cannot recover.

Answer. This request is refused, and it is submitted to you to say whether or not plaintiff has been estopped, according to the instructions given to you as to what constitutes an estoppel.[3]

Now, the testimony on behalf of the defendant is that of William Pew, of Rebecca Pew, and of Mr. Loy. The testimony of William Pew is that Mrs. Cousins was present during the time that her father and Mr. Loy were negotiating regarding this grant or right of way, and that there was conversation concerning it, and he states that his recollection of the substance of the conversation is that she was willing that her father should act for her in making this right of way contract. Rebecca Pew states that Mrs. Cousins was present at the time the contract was concluded and the writing drawn, as I understand it, and that she at that time said that she was willing for her father to act for her, or something to that effect, and that subsequently her father paid to Elizabeth Cousins part of the money. Mr. Loy says that it is his recollection, and he has no doubt, that Mrs. Cousins was present at the time this contract was made; that there were women present, and he thinks a son or two of Mr. Pew, and his recollection is that Mrs. Cous-

ins was present, and in another part of his testimony he states he does not doubt that she was present. He also says that he had no knowledge at all of her being possessed of any title to any part of this land, and that all who were present seemed satisfied with what was done. He is positive in his statement that he knew nothing at all about Mrs. Cousins being the owner of a part of this land. Mrs. Cousins states that she was not present during any of the negotiations concerning this land; that she was not present at the time the contract was made, and that she has never received from her father, or from any other source, pay in part or in whole for the crossing of this land. . . .

These witnesses testify that Mrs. Cousins was present there during those negotiations and when the contract was made. William Pew does not state that he was present when this instrument was executed. His statement is that he was present twice, at least, he thinks, when Mr. Loy and his father were talking about this negotiation and this right of way, and that Mrs. Cousins was present at that time. Now, is that true? Miss Pew says that she was present and that Mrs. Cousins was present when this agreement was consummated. Is that true? Mr. Loy states that Mrs. Cousins was present at that time. That is the first fact for you to find. Mrs. Cousins denies that she was present there. Is it true that she was present? If she was, then what took place when she was present? Mr. William Pew says that his recollection is that the purport of what Mrs. Cousins said was, that she was willing for her father to settle this right of way for her. Miss Pew says that at the time the contract was consummated Mr. Loy asked Mrs. Cousins if she was willing to have her father settle it for her, and she replied that she was.

Mr. Loy says that he had no knowledge whatever of Mrs. Cousins being the owner of any part of the land embraced in this right of way. Now, how is that fact? Had Mr. Loy that knowledge? If Mrs. Cousins was present when this negotiation was pending and was aware that the railroad company was about to enter into this contract with Samuel Pew, and if that contract was entered into and carried out by the railroad company and the road constructed, and Mr. Loy was not aware of her title, she and her successors, the plaintiffs, would be estopped. [But if she were present at the time, and if she said that

Opinion of the Court.

she was willing to have her father settle it for her, and Mr. Loy understood that she had a right to part of this land, then, if he went on and settled it with Samuel Pew, she would not be estopped in this case, but the plaintiffs would be entitled to recover.] [4]

Now, gentlemen of the jury, those are the facts upon which you are to find. First, was Mrs. Cousins present during these negotiations, or at the time when this right of way was granted by Samuel Pew? If she was, then is it true, as Mr. Loy testifies, that he had no knowledge that she was the owner of a part of this land? If so, then if the other facts are made out, the plaintiffs would be estopped. [But if it be true that she was present, and that he had knowledge from what was said by Mrs. Cousins at that time, or should have had knowledge from what was said by Mrs. Cousins at that time, that she was owner of this land or a part of it, she would not be estopped; neither would the plaintiffs. If she was not present during those negotiations, the plaintiffs would not be estopped.] [5] . . . . .

The jury returned a verdict for the plaintiffs. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal assigning for error:

1–3. The answers to the defendant's points.[1 to 3]

4, 5. The parts of the charge embraced in [ ] [4 5]

Mr. S. R. Mason (with him Mr. James D. Hancock), for the appellant.

Counsel cited: Lawrence's App., 78 Pa. 365; Zimmerman v. Canal Co., 1 W. & S. 346; Beale v. Railroad Co., 86 Pa. 509; Davis v. Railway Co., 114 Pa. 308; Trout v. McDonald, 83 Pa. 144.

Mr. Q. A. Gordon (with him Mr. S. A. Miller, Mr. S. Griffith and Mr. S. B. Griffith), for the appellees.

Counsel cited: McClinton v. Railway Co., 66 Pa. 404; Allegheny R. Co. v. Colwell, 3 Pa. S. C. Dig. 338; Penna. Salt Mfg. Co. v. Neel, 54 Pa. 9.

OPINION, MR. JUSTICE STERRETT:

It was admitted that on and prior to February 2, 1866,

Opinion of the Court.

Samuel Pew owned in fee a tract of land including the strip in controversy, and that under him, as a common source of title, both parties to this action of ejectment, respectively, claim and defend. The evidence shows that on that day Samuel Pew, by articles of agreement, transferred a part of said tract to his sons Joseph V. and A. Preston Pew; that, by sundry mesne conveyances, a portion of said last-mentioned tract, including the land in controversy, became vested in Elizabeth Cousins October 3, 1870; and that she was in possession thereof from that time until May 12, 1884, when she conveyed the same in fee to Anna R. Cousins, now Anna R. Richards, the beneficial plaintiff below. That evidence made a clear prima facie case in her favor, and entitled plaintiffs below to a verdict.

The railroad company, defendant, then gave in evidence a grant of right of way over the land in controversy to the New Castle & Franklin Railroad Company, its predecessor, executed by Samuel Pew March 26, 1874, and also introduced testimony to prove what occurred at and about the time the right of way was granted. The character of that evidence is sufficiently indicated by the points for charge submitted by defendant below. Its purpose was to show that Elizabeth Cousins, from whom the beneficial plaintiff directly derived title, was estopped by her action at and about the time the right of way was executed by Samuel Pew, and that the beneficial plaintiff took title with knowledge of the facts constituting the alleged estoppel.

It clearly appears that the New Castle & Franklin Railroad Company, predecessor of defendant company, entered upon the land in controversy, and constructed its road, under and in pursuance of the grant aforesaid. There was no evidence tending to show that the land was appropriated for railroad purposes, by either company, by virtue of its charter powers, or otherwise than under the grant of right of way. In other words, unless defendant company had a right of possession under the alleged grant, in connection with facts sufficient to constitute an estoppel, plaintiffs below were entitled to recover.

The court was requested to instruct the jury as follows:

" 1. That, the plaintiffs' testimony having shown that Elizabeth Cousins was the owner of the land on which defendant's road was constructed, at the time the same was appropriated by them for the purposes of their road and for ten or eleven

years thereafter, there can be no recovery in this case, for the reason that, as shown by the evidence, the defendant company entered upon the land in controversy and constructed its road without opposition from the owner; and this being an appropriation of the land, the right of action, if any existed, was in Elizabeth Cousins, and not in the plaintiffs.

" 2. If the jury find from the evidence in the case that Elizabeth Cousins was the owner of the land in controversy, at the time the same was appropriated by defendant company; that she was present when her father, Samuel Pew, settled the right of way with W. E. Loy, the agent of the company, and either authorized him to make said settlement, or afterwards by her silence permitted or encouraged the defendant to make valuable improvements upon the land, then she and those claiming under her are now estopped from setting up title, and there can be no recovery in this case.

" 3. That, under the law and the evidence in this case, the plaintiffs cannot recover."

The refusal of the court to affirm the first and third points, and the qualified affirmance of the second, constitute the first three specifications of error.

The first point was rightly refused, for the reason suggested in the learned judge's answer thereto. As has already been remarked, there is no evidence that the land in question was appropriated for railroad purposes otherwise than under and in pursuance of the grant above referred to. That, in connection with the alleged estoppel, was the only ground of defence the company had. Failing in that, it follows that the company was wrongfully in possession, and the principle of McClinton v. Railway Co., 66 Pa. 404, and that line of case, applies. As to the third point, it would have been error to have affirmed it, because the evidence necessarily carried the case to the jury on questions of fact relied on by the company, and especially the facts constituting the alleged estoppel.

Instead of simply refusing or affirming the second point, without more, the learned judge answered it thus:

" If you find from the evidence that, at the time the defendant and Samuel Pew made the contract shown by the instrument dated March 26, 1874, Elizabeth Cousins was present, and was aware that the railroad company, through its agent,

Opinion of the Court.

Mr. Loy, was about to take the grant of a right of way . . . . over the land in suit, and encouraged the making of this contract either by her words or by her silence; that she thereafter permitted the railroad company to pay the consideration mentioned in the writing, and construct its road on said land, without disclosing to the railroad company the true state of the title, then she and her successors in title would be estopped from setting up her title as against defendant's right of way, and the plaintiffs could not recover, unless you find that the agent of the railroad company had knowledge at the time of the title of Elizabeth Cousins. If you find that the agent of the company knew at the time he took the grant from Samuel Pew that Elizabeth Cousins was the owner of a part of the land embraced in the grant, and that the part in controversy here, there would be no estoppel. In other words, if the railroad company knew the truth, at the time they took the grant, the plaintiffs would not be estopped from showing the truth now. Thus explained, the request is affirmed."

With the single exception of the explanation or qualification contained therein, the answer above quoted is substantially in the language of the point. The qualification complained of was not erroneous. If the railroad company, through its agent, Mr. Loy, knew Mrs. Cousins owned the land in controversy, it should have procured a right of way executed by her in person, or by her duly constituted attorney in fact. Instead of doing so, it was guilty of the folly of accepting a grant from one who was neither owner of the land, nor the duly constituted attorney in fact of the owner. If the company actually knew the fact that Mrs. Cousins owned the land, how could it be deceived or misled by her alleged acts and declarations indicating the contrary? And on what principle can she or her vendee be estopped from asserting and proving the truth of that fact? If vitality can be thus infused into an unauthorized grant, it would be a very convenient way of circumventing the statute of frauds and perjuries. We think the learned judge was right in saying: "If the railroad company knew the truth, at the time they took the grant, the plaintiffs would not be estopped from showing the truth now."

The last specification, reciting extracts from the general charge, presents substantially the same question of estoppel.

Opinion of the Court.

The learned counsel for appellant, referring to the general charge on that subject, says: "We would not complain of these instructions, if there had been any evidence to warrant the submission to the jury." The evidence that the company's representative knew, at the time he procured the grant from Samuel Pew, that Mrs. Cousins owned the land in controversy may be slight, but it was proper for the jury. In appellant's history of the case, it is substantially conceded that, as the owner of the land she had purchased four years before, Mrs. Cousins was then in possession thereof. That of itself was at least constructive notice of her title. One of the witnesses also testified, in substance, that while Mrs. Cousins was participating in the negotiations at the time of the grant, Mr. Loy knew or understood that she owned the land, and in the presence of the witness asked her if she was willing to have Samuel Pew settle the matter for her. The testimony, it is true, was conflicting, but it was all proper for the consideration of the jury.

There is nothing in the record that would warrant a reversal of the judgment; but, while that is so, it would be inequitable, in view of all the circumstances, to permit it to be enforced without giving the appellant an opportunity of condemning the land, and acquiring the right of way in the manner prescribed by the act of assembly in such case made and provided. This can be done by ordering a stay of execution for sufficient length of time to enable the company to appropriate the land according to law.

Judgment affirmed; and it is ordered that upon payment of costs the execution be stayed for four months; and in the meantime the company, defendant below, may proceed to condemn the land, and acquire the right of way, according to law.