# Gillespie *v.* Buffalo, Rochester & Pittsburg Railway Company.

*Deeds—Recording act—Act of March* 18, 1775.

A deed recorded after the expiration of six months from the date of its execution, has priority over a subsequent deed recorded within six months from its execution, if the recording of the first deed is prior in date to the recording of the second deed. (Fries v. Null, 154 Pa. 573, followed.) The grantee in the second deed by taking possession and making improvements, does not thereby acquire a title superior to that of the grantee in the first deed.

Where an owner of land conveys it by deed, but retains possession, and thereafter makes a second deed and delivers possession to the grantee in it, and the first deed is recorded after six months from its date, but prior to the recording of the second deed which, however, is recorded within six months from its date, and the grantee in the first deed is ignorant of the entry upon and use of the land by the grantee under the second deed, the grantee in the first deed is entitled to recover the land in ejectment.

Argued May 8, 1901. Appeal, No. 13, April T., 1901, by defendant, from judgment of C. P. Jefferson Co., Sept. T., 1898, No. 98, on verdict for plaintiff in case of W. M. Gillespie v. The Buffalo, Rochester & Pittsburg Railway Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Ejectment for land in Clayville borough. Before REED, J.

From the record it appeared that both plaintiff and defendant claimed under deeds from J. U. Gillespie.

The court charged in part as follows:

[It appears, from a deed which has been offered in evidence, that J. U. Gillespie and wife conveyed the land in question to the plaintiff on August 5, 1880. The plaintiff, however, neglected to file this deed for record until February 7, 1883, and, in the mean time, on December 22, 1882, J. U. Gillespie and wife conveyed this same land, or a right of way over it for railroad purposes, to the defendant or to its predecessors—in view of the admission of the parties, which has gone on the record, it is immaterial which, for the defendant is possessed of its predecessors' rights in the premises. This last mentioned deed was not

placed on record, however, until April 13, 1883. Thus it will be seen that the plaintiff, William M. Gillespie, got his deed on record first, and under the decision of our Supreme Court in Fries v. Null et al., reported in 154 Pa. 573, and again in 158 Pa. 15, this would seem to give him the better title. The individual views of this court have nothing to do with the matter; when the court of last resort lays down the law, it is our business to follow it, and, if there was nothing else in this case, we would feel compelled to instruct you to return a verdict for the plaintiff.] [7] But the defendant has interposed the defense of an estoppel and this brings us to the real question in the case.

It is alleged by the defendant that the plaintiff knew that an entry was being made upon this land by the railroad company under and in pursuance of the J. U. Gillespie deed for a right of way over the same. That he knew that the said railroad company was going upon the land under the belief that it had thus acquired a good title to a right of way over it, and, knowing this, that he permitted the railroad company to go upon said land and to make its improvements thereon, without giving notice of his title or asserting any claim to the land. The defendant contends that, in those circumstances, it became and was the duty of the plaintiff to speak and to make known his claim or title to the land, and, having remained silent, that he cannot now be heard to speak or assert his title, when it would work great harm and injury to it to permit him to do so.

Where an estoppel is based upon silence, as it is in this case, the party to be estopped must have knowledge of the situation, and, knowing his own right, must be so circumstanced that it becomes his duty to speak out and to warn the other party of his danger. It is alleged here that the plaintiff was living with his father, that the railroad was being built in close proximity, that it was the first railroad ever built in that locality, that the population was not large, and that an event of this character was likely to be talked about and known to every one in the neighborhood. Also, that one of the employees of the railroad company was introduced to the plaintiff by his father as the engineer in charge of the railroad they were building through the property, which occurred at the time of the delivery of the deed for the right of way, or a week or two thereafter. In this connection it should be remembered, however, that the plaintiff was

at that time and ever since deprived of a very important sense for acquiring knowledge, namely, the sense of sight. He has been blind almost from his infancy and this is to be taken into account and consideration in determining his knowledge of what was going on at the time this railroad was being built. Did he know that the railroad was being constructed on and across the land in dispute? That it was being so constructed under and in pursuance of a right of way granted by his father, and that this right of way was worthless in that he, and not his father, held the title to the land? Knowing all this, did he remain silent? Did he permit the railroad company to go on with its improvements and to expend large sums of money in constructing its road in the manner that it did without making known his title or claim to the land? If he knew that the railroad was being built across this land, that it was being done under a right of way granted by his father, and that the railroad company was making improvements and expending large sums of money on the faith of the right of way so granted to it, and further knew that the title to the property was in him and not in his father, then it became and was his duty to speak out and to warn the railroad company of the true situation, as he now claims it, and having failed to do so, then he would be estopped from doing so now.

[Now, gentlemen, applying that to this case, did the plaintiff know that the defendant, or its predecessors—the Brockwayville & Punxsutawney Railroad Company—had entered into possession of this land under the belief that it had a clear right to do so? Did he know that it had purchased and paid for this right of way, believing that J. U. Gillespie owned the land, and that it was grading and proceeding to put down its track, making expensive improvements on the land on the faith of that grant, and, knowing this, did he remain silent as to his own claim? If he did, he is estopped from speaking or setting it up now, and your verdict should be for the defendant. But, if he was ignorant of the situation as it existed there, did not know what the railroad company was doing, or how it was proceeding, or that any right or claim of his to the land was being invaded by it, then of course there would be no duty resting upon him to speak and his silence would not work an estoppel; and in that event he would be entitled to a verdict for the land described in the writ.] [8]

Now we think we have made plain to you the law on this question and it remains for you to apply it to the evidence in the case and then say what your verdict should be.

The defendant has presented a number of points for instruction, but, under the law and facts of the case, we cannot affirm any of them in the form presented, and therefore they are severally refused. The affirmation of these points would require a decision of the case by us and [we think it involves a question of fact to be determined by the jury, namely, the question of estoppel, to which we have explicitly called your attention. If, as explained in these instructions, you find from the evidence that the plaintiff was ignorant of what was going on, and that no duty devolved upon him to speak out and warn the railroad company of his claim or title to the land, then you will return a verdict in his favor for the land in dispute, but if you find that he did know what was going on and remained silent, when it was his duty to speak, then you will return a verdict for the defendant.] [9]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (7, 8) above instructions, quoting them.

*C. Z. Gordon* and *C. H. M'Cauley*, for appellant.—The defendant practically requests this court to overrule the opinion of a majority of the court in the case of Fries v. Null, 154 Pa. 573.

Defendant was in actual possession, had expended money and made valuable improvements on this land, of which plaintiff had knowledge, prior to the recording of plaintiff's deed. This was actual notice, and would be equivalent to the recording of defendant's deed: Lightner v. Mooney, 10 Watts, 407; Sailor v. Hertzog, 4 Wharton, 259; Jaques v. Weeks, 7 Watts, 261; Hottenstein v. Lerch, 104 Pa. 454; Brinser v. Anderson, 20 W. N. C. 505; Butcher v. Yocum, 61 Pa. 168.

The defendant's road was fully located in August, 1882, and without objection from the landowner, and its title to this right of way dates from the date of the final location: Lawrence's App., 78 Pa. 365; Davis v. Titusville & Oil City Ry. Co., 114 Pa. 308; Beale v. Penna. R. R. Co., 86 Pa. 509.

Under the facts the plaintiff would now be estopped from setting up his title to the land: Nass v. Vanswearingen, 10 S. & R. 144; Buchanan v. Moore, 13 S. & R. 304; Lewis v. Carstairs, 6 Wharton, 193; Beaupland v. McKeen, 28 Pa. 124; Maple v. Kussart, 53 Pa. 348; Hill v. Epley, 31 Pa. 331; Crowell v. Meconkey, 5 Pa. 176; Woods v. Wilson, 37 Pa. 379; Chapman v. Chapman, 59 Pa. 214; Epley v. Witherow, 7 Watts, 163; Allegheny Valley R. R. Co. v. Colwell, 2 Monaghan, 300; Bell v. Ohio & Penna. R. R. Co., 25 Pa. 161; Couch v. Sutton, 1 Grant's Cases, 114; Dolph v. Hand, 156 Pa. 91; Bush v. Genther, 174 Pa. 154; Wahl v. Pittsburg & Western Ry. Co., 158 Pa. 257.

Whether an estoppel results from established facts, is a question for the determination of the court; and the judge seems not to have gone far enough in submitting the question of equitable estoppel, so to call it, to the jury: Lewis v. Carstairs, 5 W. & S. 205–209; Coons v. Steele, 19 Pa. 204; McCracken v. Roberts, 19 Pa. 391.

*Charles Corbet*, of *Jenks & Corbet*, with him *Clarence O. Morris*, for appellee.—An unrecorded deed is null and void as against a bona fide purchaser of the same land for a valuable consideration, and nothing can save it but placing it on record before the second purchaser gets his deed there: Fries v. Null, 154 Pa. 579; Collins v. Aaron, 162 Pa. 539.

While possession in a first grantee may be constructive notice to subsequent purchasers, yet it has never been contended that this would operate as notice to prior grantees: Lightner v. Mooney, 10 Watts, 407.

The entry of the company without the consent of the real owner made it a trespasser, and it might be proceeded against either in trespass or ejectment: Philadelphia, etc., R. R. Co. v. Cooper, 105 Pa. 239; Keil v. Chartiers Valley Gas Co., 131 Pa. 466; Wheeling, etc., Railroad Co. v. Warrell, 122 Pa. 613.

The only way in which the real owner can be affected with notice arising from possession is by adverse possession for a period of twenty-one years, in which case the law presumes a grant to the person in possession and those claiming under him.

If the exercise of ordinary diligence on the part of the rail-

road company would have led to the discovery of plaintiff's deed, there could be no estoppel: Hill v. Epley, 31 Pa. 331.

That the recording of a deed is notice to all the world a constructive notice to the appellant or those under whom it claims, is plain from the following cases: Knouff v. Thompson, 16 Pa. 357; Pennsylvania Salt Mfg. Co. v. Neel, 54 Pa. 9; Goundie v. Northampton Water Co., 7 Pa. 233; Evans v. Jones, 1 Yeates, 172; Silliman v. Whitmer & Sons, 11 Pa. Superior Ct. 243.

OPINION BY WILLIAM W. PORTER, J., July 25, 1901:

This is an ejectment brought by William M. Gillespie against the Buffalo, etc., Railway Company. The plaintiff claims title to the land by deed from J. U. Gillespie and wife, dated August 5, 1880, and recorded February 7, 1883. The defendants claim title by deed from J. U. Gillespie and wife to the Brockwayville, etc., Railway Company (by which company the land was subsequently conveyed to the defendants), dated December 22, 1882, and recorded April 13, 1883. The title, upon the dates of execution and recording, is in the plaintiff. The case comes within the rule laid down in Fries v. Null, 154 Pa. 573, and 158 Pa. 15. The appellants, in terms, ask us to reverse the decision of the Supreme Court. This we are unwilling to do. See also Collins v. Aaron, 162 Pa. 539.

The appellants, however, contend that the plaintiff, having failed to record his deed within six months after its execution, and the defendants, (by their predecessors in title) having, as it is alleged, taken possession and made improvements upon the land in dispute prior to the recording of the plaintiff's deed, the possession of the defendants was notice to the plaintiff of their title and the equivalent of a recording of the defendants' deed. The plaintiff's deed antedated that of the defendants, and had the plaintiff, with the knowledge of the defendants, taken visible possession of the land before recording his deed, it might have been notice to the defendants. See Lightner v. Mooney, 10 Watts, 407. But we are not prepared to hold, nor would any of the cases seem to sustain the view, that the defendants having, in ignorance, accepted a deed posterior to the date of the plaintiff's deed, and having taken possession and made improvements, thereby acquired a title superior to that of

the plaintiff, who recorded his deed anterior to the recording of the defendants' deed, both being recorded more than six months after execution. See Penna. Salt Mfg. Co. v. Neel, 54 Pa. 19.

The appellants further contend that J. U. Gillespie (the plaintiff's deed being unrecorded), was the owner, and that his grant to the railroad was a mere easement and operated as a release of claims. There are several answers to this proposition. 1. J. U. Gillespie may have been in possession, but title to the real estate was, by virtue of the deed to William M. Gillespie, in the latter at the time that the deed of grant was made to the railroad company, subject only to be cut out by the prompt recording of the company's deed. 2. The railroad company did not enter into possession by appropriation under statute, but by virtue of the grant made by J. U. Gillespie. The conveyance of the right of way was absolute. The title of the defendants stands upon the grant, which does not purport to be a mere release of claims, and is not a grant from the real owner: Richards v. Buffalo, etc., R. R. Co., 137 Pa. 530. 3. If the railroad company entered upon the land by permission of J. U. Gillespie, who is alleged to have been in possession, but who was not the real owner, the possession obtained was no more than J. U. Gillespie could give. Such a state of facts might be a bar to an action in trespass, but not to an ejectment by one holding a deed anterior in date and record to that to the railroad company, neither deed having been recorded within six months of execution: Oliver v. Pittsburg, etc., Ry. Co., 131 Pa. 408. Especially is this true as to one who, holding the deed anterior in date and record, has been found by the jury to have been ignorant of the entry upon and use of the land by the holder of the posterior conveyance.

The appellants further claim that the plaintiff is estopped from setting up his title because he had knowledge of the delivery of the deed by his father to the railroad company, and kept silence as to the anterior deed which had been made to him. In order to operate as an estoppel, the fact that the plaintiff had knowledge of the matters alleged by the defendants must have been ascertained. The allegation of knowledge was in large part based on oral testimony, the credibility of which was for the jury. The learned trial-judge instructed the jury that if

the plaintiff " knew that the railroad was being built across this land, and that the railroad company was making improvements and expending large sums of money on the faith of the right of way so granted to it, and further knew that the title to the property was in him and not in his father, then it became and was his duty to speak out and to warn the railroad company of the true situation, as he now claims it, and having failed to do so, then he would be estopped from doing so now." Thus were the matters of silence and knowledge submitted to the jury as questions of fact, with clear instructions as to the effect of the facts if found. The verdict for the plaintiff is thus a finding that the plaintiff had not the knowledge of the transaction with which he was charged by the defendants.

We think further discussion unnecessary and, therefore, the judgment is affirmed.

ORLADY, J., dissents.