## Coatesville & Downingtown Street Railway Company, Appellant, v. Uwchlan Street Railway Company.

*Street railways—Municipal consent—Priority of right—Act of June 7,* 1901, *P. L.* 514.

Where a street railway company has been granted a charter for a street railway over certain streets, but has not received the municipal consent, it has no standing in equity to restrain another company subsequently chartered from building over the same streets, where it appears that the second company has received the municipal consent. There is nothing in the Act of June 7, 1901, P. L. 514, to change this rule.

The "reasonable time" within which under the act of May 14, 1889, the municipal consent must be obtained in order to perfect a street railway company's right to occupy streets, is fixed by the act of June 7, 1901, at two years.

*Corporations—Street railways—Inquiry into rights and franchises— Act of June* 19, 1871, *P. L.* 1361.

Before an investigation into the rights and franchises of a corporation may be made at the instance of a private citizen or another corporation, it must be alleged that the private rights of such individual or the rights or franchises of such corporations are injured or invaded, or are threatened with injury or invasion by the other corporation.

Argued Nov. 22, 1901. Appeal, No. 253, Oct. T., 1901, by plaintiff, from decree of C. P. Chester Co., Equity Docket 383, 1901, on bill in equity in case of Coatesville & Downingtown Street Railway Company v. Uwchlan Street Railway Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity for an injunction.
Motion to continue preliminary injunction.

The court below filed the following opinion:

The question presented upon hearing of above case is whether the preliminary injunction heretofore granted should be continued.

Both corporations have procured charters from the state, and the defendant company has the consent of the borough of Downingtown to lay its tracks in excess of 2,500 feet upon certain streets of said borough which are covered by the charter

and extension routes of the plaintiff company, which were secured and perfected prior to the incorporation of defendant company. The plaintiff company has not acquired the consent of said borough to construct its road within its limits.

Conceding that under the authority of Homestead Street Railway Co. v. Pittsburg, etc., Electric St. Ry. Co., 166 Pa. 162, the plaintiff company has, as against defendant, a prior and exclusive right to the occupancy of the streets in question in so far as the state has conferred the same under existing legislation, it has not as yet acquired the consent of the borough to the use of its streets, and is therefore not in a position where it may use or occupy said streets.

Now then upon the principle and under the decision in Larimer, etc., St. Railway Co. v. Larimer St. Ry. Co., 137 Pa. 533 (recognized and distinguished in Homestead St. Ry. Co. v. Pittsburg, etc., Electric St. Ry. Co., supra) has it standing in equity to seek to restrain the defendant company from using said streets ?

It was argued that the last cited case was rendered inapplicable by the passage of the act of June 7, 1901, which it is urged confers upon street railway corporations higher and greater rights than they in advance of municipal consent theretofore enjoyed.

We are unable to discover any change in this respect other than that the "reasonable time in which to obtain municipal consent" (Homestead St. Ry. Co. v. Pittsburg, etc., St. Ry. Co., supra, page 170) has been fixed by the act of 1901 at two years from the date of incorporation.

Until, therefore, the plaintiff company has secured the borough's consent to the use of its streets, it cannot use or occupy them and consequently has no standing to restrain their use by others ; if such consent be secured within the two years, they may then be in a position to insist upon their exclusive use and enjoyment of said streets under their prior charter and extension.

Entertaining these views we must dissolve the preliminary injunction granted in this case.

*Error assigned* was the decree of the court.

*George Quintard Horwitz*, with him *Thomas W. Pierce*, for appellant, cited: Homestead St. Ry. Co. v. Pittsburg, etc., Electric St. Ry. Co., 166 Pa. 162; Act of June 7, 1901, sec. 4, P. L. 514; Hannum v. Media, etc., Electric Ry. Co., 200 Pa. 44.

*J. Frank E. Hause*, for appellee, cited : Larimer, etc., St. Ry. Co. v. Larimer St. Ry. Co., 137 Pa. 546; Homestead St. Ry. Co. v. Pittsburg, etc., Electric St. Ry. Co., 166 Pa. 167.

OPINION BY RICE, P. J., December 16, 1901:

This case does not differ in any of its controlling facts from the case of Larimer, etc., St. Ry. Co. v. Larimer St. Railway Co., 137 Pa. 532. There as here, the older corporation sought to restrain the younger corporation from building a street railway upon a street covered by the charter of the former. In that case both corporations applied for municipal consent which was granted to the younger and refused to the older. In this case both applications for municipal consent came up at the same time, and while it does not appear that the application of the older corporation was formally refused, it is admitted that it was not granted and that the application of the younger corporation was granted. This, in effect, was a refusal of the application of the older corporation. Speaking of the rights of the older corporation, and of its standing to invoke the aid of a court of equity, Mr. Justice CLARK, who delivered the opinion of the court, said, "Although the unauthorized occupation of a public street by a railway track may be regarded as a nuisance per se, which will be enjoined, chancery will not restrain an act which affects the whole community, at the suit of a private citizen or a corporation, unless the plaintiff can make out a case of special damage : Sparhawk v. Union Pass. Railway Co., 54 Pa. 401; and it is difficult to see how the complainants may be said to have suffered special damage, when they have shown no right whatever to the occupancy of the street for the purposes of their incorporation." The bill was dismissed for the reason that the plaintiff, although the older corporation, had not obtained municipal consent, and therefore had no special right in the street which was in danger of immediate and irreparable injury by the threatened action of the

defendant. It is urged that the Larimer Railway case does not control the case at bar, because the Act of June 7, 1901, P. L. 514, under which the plaintiff's charter was granted, provides that the corporation shall have two years within which to obtain municipal consent, and that " whenever a charter, after the approval of this act, shall be granted to any corporation to build a road as provided by this act, no other charter to build a road on the same streets, highways, bridges or property shall be granted to any other company within the time during which, by the provisions of this act, the company first securing the charter has the right to commence and complete this work." But it was decided in the case of Homestead Street Railway Co. v. Pittsburg, etc., Electric Street Railway Co., 166 Pa. 162, that under the act of 1889 there could be but one street railway franchise upon the same highway, that as between two corporations the older has the better right, and that there must be conceded to it a reasonable time within which to obtain municipal consent. Construing the first section of that act the court said: " There can be but one meaning to these words and that is, if the track is already laid, or even authorized to be laid, on the proposed street or highway, then there can be no incorporation of such company. It cannot come into existence, and, as a matter of course, if a charter should be obtained in such circumstances, it would be simply nugatory; it could confer no power in hostility with the law of its creation." It is thus seen that the right of the older corporation chartered under the act of 1901 is not greater than was the right of the older corporation chartered under the act of 1889, as construed in the case last cited. The difference is, that the "reasonable time" within which under the act of 1889 municipal consent must be obtained, in order to perfect the company's right to occupy the streets, is fixed by the act of 1901 at two years. This difference is not such as warrants a different decision as to the standing of a company chartered under the act of 1901, which has not obtained municipal consent, to invoke the aid of a court of equity. If the plaintiff obtains municipal consent within two years, it may then be in a position to insist upon· its exclusive use of the street under its prior charter and extension, as the court below has well said. But as the case now stands the following language taken from the opinion of the Supreme Court in the Lar-

imer Railway case is as pertinent here as it was in that case. "The charter gave the company a legal existence, clothed it with corporate power, placing it in a position to undertake the purpose for which it was organized, and to solicit the privilege of entering upon the streets in question to construct their road; but their right so to do was expressly conditioned upon the action of the councils to that effect. Until they obtain that right, they cannot be said to suffer any special damage or irreparable injury, which would call for the intervention of equity; for, as we have said, although the appellees may, perhaps, have no right, it is clear that the complainants have none."

We are referred to the Act of June 19, 1871, P. L. 1361, as authority for inquiring into the rights and franchises of the defendant company. But before such investigation may be made at the instance of a private citizen or another corporation, it must be alleged that the private rights of such individual or the rights or franchises of such corporation are injured or invaded or are threatened with injury or invasion by the other corporation. We have endeavored to show that this essential prerequisite to the exercise of the jurisdiction conferred by the act of 1871 does not exist in the present case. And if this be true it would seem equally plain that the plaintiff is not entitled to invoke the restraining power of a court of equity in aid of the quo warranto proceedings instituted by the attorney general in the name of commonwealth. If the bill had been filed by the attorney general an entirely different question would be presented.

In explanation of the order about to be made, it should be stated that at the argument in this court, the parties agreed in writing that the cause might be considered and disposed of as upon final decree.

The decree of the common pleas is affirmed and the bill dismissed at the cost of the appellant.